FRED WISSNER, Appellant, v 15 WEST 72ND STREET ASSOCI-
ATES, Respondent.

First Department, May 27, 1982

APPEARANCES OF COUNSEL

*Harold W. Grubart* for appellant.

*Charles Yablon* of counsel (*Skadden, Arps, Slate, Meagher & Flom,* attorneys), for respondent.

OPINION OF THE COURT

LUPIANO, J.

This action arises out of the conversion of 15 West 72nd Street to co-operative ownership through a noneviction plan. Plaintiff is the lessee of apartment 1-R in this housing complex containing 497 apartments. The leased premises are subject to the Rent Stabilization Law (RSL) (Administrative Code of City of New York, § YY51-1.0 *et seq.*). Plaintiff has been a tenant since February 1, 1970, pursuant to four consecutive leases specifying rentals as provided by the RSL. The leases are, respectively, dated January 22, 1970, December 6, 1972, December 22, 1975, and January 3, 1979, and provide that "(t)he Apartment shall be occupied only by Tenant and the immediate family of Tenant, for living purposes only", or that the apartment

"shall be occupied only by Tenant and the members of the immediate family of Tenant, and as a strictly private dwelling apartment and for no other purpose." They also provide that "(t)he receipt by Landlord of rent with knowledge of the breach of any covenant of this lease shall not be deemed a waiver of such breach and no provision of this lease shall be deemed to have been waived by Landlord unless such waiver be in writing signed by Landlord," or "(t)he receipt by Landlord of rent with knowledge that the Tenant is not living up to one or more provisions of the Lease shall not be a waiver of any such violation or violations. No agreement of the Lease can be waived by Landlord unless such waiver is in writing signed by the Landlord."

Defendant by its answer admits that it owned the building at the time plaintiff became a tenant and continued such ownership prior to the building's conversion to co-operative ownership on May 22, 1980, and that it still owns the shares of the co-operative apartment corporation, 15 West 72nd Street Owners Corp., allocable to unsold apartments in the building. It is also admitted by defendant in its answers to plaintiff's interrogatories that it knew "since shortly after January, 1970, of facts which led [it] to believe that plaintiff was using the subject premises as his business office for the practice of psychology" and that it never objected to plaintiff's use of the premises for the practice of psychology until April, 1980. Further, in its answer defendant admits that it presented the offering plan for co-operative conversion in October, 1979. This admission is further amplified by its counsel's declaration that the offering plan was "distributed to all apartments in the Building between October 2 and October 11, 1979."

In the offering plan two insider prices were offered: one to non-RSL tenants and another (25% lower) to RSL tenants. Plaintiff, regarding himself as an RSL tenant entitled to avail himself of the lower price (in this instance $42,000, rather than the higher price of $56,000 for the shares allocated to his apartment), tendered a down payment of 10% ($4,200) and a signed purchase application on or about April 7, 1980. Defendant has apparently not presented this check for collection and informed plaintiff

that he could not obtain the 25% discount because apartment 1-R is not his primary residence, but is used by him as an office to conduct his business as a clinical psychologist. Viewing plaintiff as a non-RSL tenant, defendant avers that it offered plaintiff on April 16, 1980 an opportunity to purchase the shares allocable to his apartment (1-R) at the higher price of $56,000, but that plaintiff refused.

On plaintiff's motion for summary judgment in his favor in this action wherein plaintiff seeks to enforce the terms of the contract whereby he would be entitled to purchase the co-operative apartment for the sum of $42,000, Special Term denied such relief, holding that there are factual issues precluding summary judgment, to wit, whether the apartment is plaintiff's primary residence; whether defendant waived plaintiff's use of the premises as a violation of the lease; and whether defendant waived its right to challenge plaintiff on the issue of primary residence.

The key cases of *de Vasconcelos v Berkley Assoc.* (78 AD2d 808) and *Thuna v Di Sanza* (78 AD2d 517) are cited in the briefs. In *Thuna v Di Sanza (supra)*, we affirmed, without opinion, the resettled order and judgment of the Supreme Court, New York County, entered on April 15, 1980, emanating from the Special Term opinion of Justice Ascione (102 Misc 2d 342) to the effect that the tenant of record, in a rent-stabilized apartment in a building that is being converted to co-operative ownership, is entitled under the RSL to purchase the shares of stock allocated to the apartment pursuant to subdivision 5 of section 61 of the Code of the Real Estate Industry Stabilization Association of New York City, Inc. (Rent Stabilization Code). The issue of whether the tenant of record used the apartment as a primary residence was viewed as irrelevant. It must be noted that the apartment in *Thuna* was occupied not by the tenant of record, but by the tenant's niece and her husband under an informal sublease arrangement that never was approved in writing by the landlord as required under the lease. Special Term further concluded that the landlord could not now claim that Thuna is not the proper lessee *of record* because of Thuna's failure to secure the landlord's consent to the sublease, because the landlord, with knowledge of the subletting failed to take any steps to evict

Thuna on that ground prior to the conversion of the building to co-operative status and, thus, may not now avail himself of the plaintiff's failure so as to prevent her from purchasing the shares under the offering plan, i.e., obtaining the insider's price. Under both the offering plan and subdivision 5 of section 61 of the Rent Stabilization Code, *the time of the offering is the critical date* on which one must be a tenant in occupancy or lessee of record.

Similarly, in *de Vasconcelos v Berkley Assoc. (supra)*, the crucial date is the date of presentation of the offering plan for co-operative conversion because such date, according to the offering therein, was the determinative date for tenant eligibility to purchase. This court aptly noted that on such date (January 2, 1979), the plaintiff tenant enjoyed rent control status, i.e., "the apartment was subject to rent control, even though the application for decontrol had been filed approximately one year earlier" and an order of decontrol issued subsequently on May 11, 1979 (*supra,* at p 808). The order of decontrol was not entitled to retroactive effect and, as a consequence, we held, as a matter of law, that plaintiff could not claim "status as *the occupant of a rent-stabilized apartment"* at the time of presentation of the offering plan (*supra,* at p 809; emphasis supplied). The offering plan offered the shares only to "bona fide residential tenants in actual physical occupancy of a rent-controlled apartment." Thus (p 809), "an issue of fact [was] presented as to whether plaintiff, apparently a resident of Mexico, was at the date of the presentation of the plan a bona fide occupant of her apartment" and whether she used the apartment as her primary residence.

Comparison of *de Vasconcelos (supra)* with *Thuna v Di Sanza* (102 Misc 2d 342, affd without opn 78 AD2d 517, *supra*) discloses the critical distinction between the two cases. In *Thuna* the issue of the tenant's "primary residence" and "physical occupancy", was found to be immaterial because though required under the offering plan, tenant enjoyed the status of a rent-stabilized tenant and under subdivisions 4 and 5 of section 61 of the Rent Stabilization Code, the sponsor was required to offer shares to *"lessees of record of vacant or subleased apartments* at the time of the offering". Under the rent control laws, there is no such

corresponding provision and thus, in *de Vasconcelos* the restrictive language of the offering plan was viewed as valid.

The key issue presented in the instant matter is whether, on the date of presentation of the offering plan, plaintiff was an "RSL tenant", defined in the offering plan as a tenant "entitled to the benefit of the RSL". By statutory language, the RSL is made applicable to certain "[c]lass A multiple dwellings", certain "other housing accommodations" and certain "[b]uildings or structures" (Administrative Code, § YY51-3.0). The statute (RSL) is accommodation-oriented, not person-oriented. It is not disputed that plaintiff's apartment (1-R) is an accommodation subject to the RSL. It is also not disputed that the defendant landlord did not at any time institute an action or proceeding to recover possession on the ground that the plaintiff tenant was violating a substantial obligation of his tenancy (Rent Stabilization Code, § 53, subd [a]) or urge any other ground for eviction. It is not disputed that the landlord has successively offered the tenant three renewal leases, and at no time did the landlord seek to avail itself of the benefit of section 54 of the code which permits refusal to offer a renewal lease when the owner has established before the conciliation and appeals board that the dwelling unit is not occupied by the tenant in possession as his primary residence. Relevant to these observations, it must be noted that the leases affecting apartment 1-R, subscribed by the parties herein, provide the tenant with an opportunity to cure his failure (default) to keep any of his agreements mentioned in. the lease within five days after service by the landlord of a five-day written notice upon the tenant stating the nature of the default. Upon the tenant's failure to cure such default, the landlord is empowered pursuant to the lease provision to serve a three-day notice of termination of lease. The landlord never sought to avail itself of these contractual provisions and thus never afforded to tenant the opportunity to cure the default as required by these provisions.

Accordingly, on the critical date of the presentation of the offering plan for co-operative conversion, the plaintiff was the lessee of record of an apartment subject to rent

stabilization whose status, as such, had not theretofore been challenged by the landlord nor changed by eviction action or proceeding, or by a determination, administrative or judicial, that the premises were not his primary residence. In light of the aforesaid, and in view of the teaching of *Thuna v Di Sanza (supra)* and *de Vasconcelos v Berkley Assoc.* (78 AD2d 808, *supra*), it is concluded, as a matter of law, that the plaintiff was an "RSL tenant" on the date of presentation and, therefore, entitled to the offering price less the 25% discount offered to rent-stabilized tenants, i.e., the price of $42,000. The factual issues upon which Special Term based its denial of summary judgment relief are immaterial and do not constitute an obstacle to such relief.

The order of the Supreme Court, New York County (KIRSCHENBAUM, J.), entered April 16, 1981, denying plaintiff's motion for summary judgment, should be reversed, on the law, with costs and disbursements, and the motion granted.

MURPHY, P. J., MARKEWICH, BLOOM and FEIN, JJ., concur.

Order, Supreme Court, New York County, entered on April 16, 1981, unanimously reversed, on the law, and the motion for summary judgment granted. Appellant shall recover of respondent $75 costs and disbursements of this appeal.