RICHARD DE CHRISTOFORO, Individually and as Executor of ELAINE DE CHRISTOFORO, Deceased, Respondent, v SHORE RIDGE ASSOCIATES et al., Appellants.

Second Department, March 31, 1986

## APPEARANCES OF COUNSEL

*Norman S. Langer (Irving Lederman* of counsel), for appellants.

*Kalman Kaplan* for respondent.

## OPINION OF THE COURT

MANGANO, J.

Does the unexercised right of a deceased lessee of a rent-stabilized apartment to purchase the shares allocated to the apartment, pursuant to an offering plan in existence at the time of the lessee's death, pass to the lessee's estate, or does the right expire upon the lessee's death? This is the crucial issue to be resolved upon this appeal.

We conclude that the right passes to the estate of the deceased.

### I

On June 15, 1981, the plaintiff's decedent, Elaine De Christoforo, entered into a lease with the defendant landlord Shore Ridge Associates, for the rent-stabilized apartment No. 5E, at 9411 Shore Road, Brooklyn. The term of the lease was for three years, beginning July 1, 1981, and ending June 30, 1984, and the rental was $453 per month.

The defendant Shore Ridge Associates and the defendant sponsor, Shore View Corporation, submitted a noneviction plan for the cooperative conversion of the building at 9411 Shore Road, which was approved by the Attorney-General. Thereafter, while the plaintiff's decedent was still alive, an offering of conversion to cooperative ownership was made to the tenants of the building, pursuant to General Business Law § 352-eeee.

On March 31, 1984, the plaintiff's decedent died without

having exercised her right to purchase the shares allocated to her apartment. The plaintiff, who is the decedent's son, was appointed the executor of her estate on May 29, 1984. The plaintiff continued to pay rent for the apartment for May and June 1984. These rental payments were accepted by the defendant landlord. The plaintiff also attempted, within the requisite time period, i.e., prior to the expiration date of the offering, to tender a deposit for the purchase of the shares allocated to his mother's apartment at the insider's price. However, these attempts were consistently rejected by the landlord on the ground that the right to purchase the cooperative apartment at the insider's price lapsed on the death of the tenant named in the lease. In addition, the defendant landlord instituted a proceeding in the Civil Court, Kings County, to evict the executor as a squatter.

The instant action was commenced by the plaintiff for (1) a judgment declaring that the estate had the right to purchase the shares allocated to the apartment formerly occupied by his mother, (2) an injunction prohibiting the defendants from disposing of, in any way, the shares allocated to apartment No. 5E, except to the plaintiff, and (3) an injunction staying the Civil Court proceeding.

In conjunction with the action, the plaintiff moved for a preliminary injunction. In several opposing affidavits, the president of the defendant Shore View Corporation, and the defendants' counsel again alleged that the offering had been made solely to the tenant, i.e., to the plaintiff's decedent, and not to the plaintiff who was the executor of the decedent's estate.

After all of the affidavits in support of, and in opposition to, the plaintiff's motion for a preliminary injunction were submitted, the defendants served an answer on September 24, 1984.

Thereafter, Special Term, in effect, treated the plaintiff's motion for a preliminary injunction as one for summary judgment, granted the motion, and directed the defendants to: "convey and transfer the shares of stock of the Cooperative Apartment #5E located at 9411 Shore Road, Brooklyn, New York to the Estate of Elaine De Christoforo provided plaintiff comply with all payments required to be paid to defendant in the same manner and in the same amount that the said Elaine De Christoforo, deceased, would have had to pay".

Special Term also stayed the eviction proceeding pending in the Civil Court, Kings County.

## II

It is well settled in New York, and in other jurisdictions as well that: "A lease for a term of years is not terminated by the death of the lessee prior to the expiration of the term; the lease passes as personal property to the estate which remains liable for payment of the rent *(Schnee v Jonas Equities,* 109 Misc 2d 221). An executor is justified in holding on to the premises *in his representative capacity* until the expiration of his decedent's term and is under no duty to surrender possession prior thereto *(Remford Corp. v Rosenfeld,* 274 App Div 769)" *(Joint Props. Owners v Deri,* 127 Misc 2d 26, 27, *revd on other grounds* 113 AD2d 691; *see also,* EPTL 13-1.1; 2 Rasch, New York Landlord & Tenant, Summary Proceedings § 1016 [2d ed]; 34 NY Jur, Landlord and Tenant, § 358; 49 Am Jur 2d, Landlord and Tenant, § 7, at 50). As the Appellate Term stated in *Schnee v Jonas Equities* (109 Misc 2d 221, 222): "[T]he estate replace[s] the deceased tenant as a party to the lease by operation of law."

As a corollary to those well-settled principles, both the courts of this State and several of our sister States have held that the personal representative of the deceased lessee takes the leasehold together with the benefit of any option to purchase contained in the lease, and the option may be enforced by the personal representative *(see, Walker v Bradley,* 89 Misc 516; *Gustin v Union School-Dist.,* 94 Mich 502, 54 NW 156; *Hagar v Buck,* 44 Vt 285). As the court in *Walker v Bradley (supra,* at pp 518-519), stated:

"Plaintiff's intestate held a lease for years which contained an option for purchase which, at his death, had not been exercised. This option was not a contract of sale, but simply a covenant running with the land (McAdam Landl. & Ten. [3d ed.] 465), and under well understood principles, in the absence of any limitation contained in the lease itself, it inured to the benefit of whomsoever might come in under the original lessee * * *

"All such leases and all rights thereunder are to go to and belong to the personal representative, and this includes covenants contained in such instruments, whether running with the land, or otherwise. The ownership of a lease carries with it, of necessity, as has been above pointed out, the power to enforce same in accordance with its terms for the benefit of the estate of the decedent and those who are entitled to the proceeds thereof.

"It follows, therefore, that this plaintiff, being the owner of a lease which contains an option for purchase of the land, is entitled to exercise that option for the benefit of the estate which she represents, and upon refusal of the lessors to comply with their covenant is empowered to, in her representative capacity, maintain this action for its enforcement."

In the case at bar, the option is not contained in the lease itself. Nevertheless, that distinction does not mandate a departure from the general rule heretofore set forth.

General Business Law § 352-eeee (2) (d) (ix) provides that "tenants in occupancy on the date the attorney general accepts the plan [for conversion to cooperative or condominium ownership] for filing shall have the exclusive right to purchase their dwelling units or the shares allocated thereto". This provision is "repeated in essence" (Consolidated Edison Co. v 10 W. 66th St. Corp., 61 NY2d 341, 346) in Code of the Rent Stabilization Association of New York City, Inc. (Rent Stabilization Code) § 61 (4) (b), which provides that: "[a] tenant in occupancy at the time of the offering shall have the exclusive right to purchase his apartment or the shares allocated thereto". It has been consistently held that the phrase "tenant in occupancy" is defined, for the purposes of purchasing the shares allocated to an apartment upon a cooperative conversion thereof, as the lessee of record, whose name appears on the lease (see, Ian v Wassberg, 80 AD2d 505, affd 55 NY2d 706; Burns v 500 E. 83rd St. Corp., 90 AD2d 706, affd 59 NY2d 784; Spitalnik v Springer, 87 AD2d 797, mod on other grounds 59 NY2d 112). The term "time of the offering" as that phrase is used in the Rent Stabilization Code, refers to the date that the conversion plan accepted for filing by the Attorney-General is distributed to the tenants (Wissner v 15 W. 72nd St. Assoc., 87 AD2d 120, affd 58 NY2d 645; Apfelberg v East 56th Plaza, 78 AD2d 606; Rakowski v Rakowski, 109 AD2d 1). The plaintiff's decedent was living in apartment No. 5E on the date the conversion plan, accepted for filing by the Attorney-General, was distributed to the tenants, and as the lessee of record, the plaintiff's decedent had the right to purchase the shares allocated to her apartment (see, Ian v Wassberg, supra; Burns v 500 E. 83rd St. Corp., supra; Spitalnik v Springer, supra; Consolidated Edison Co. v 10 W. 66th St. Corp., supra; Wissner v 15 W. 72nd St. Assoc., supra; Rakowski v Rakowski, supra).

The question of whether the unexercised statutory right of a deceased lessee of a rent-stabilized apartment to purchase the

cooperative shares allocated to the apartment passes to the estate of the deceased lessee has been decided, not only by Special Term in the case at bar, but by several other decisions at nisi prius. All of these decisions have answered this question in the affirmative *(see, Bunim v 300 CPW Apts. Corp.,* NYLJ, June 30, 1982, p 6, col 3; *De Kovessey v Coronet Props. Co.,* NYLJ, July 23, 1985, p 11, col 3; *Matter of Wasserman,* 127 Misc 2d 77).* As the court in *De Kovessey v Coronet Props. Co. (supra,* col 4) stated: "The offering was made to the decedent when she was still alive. Plaintiff is her legal representative and successor. At the time of the offering, the decedent was a tenant of record. Accordingly, it seems beyond dispute that plaintiff asserts a valid right to purchase and as an insider." Surrogate Roth of New York County was equally emphatic in her resolution of the issue, stating *(Matter of Wasserman, supra,* at pp 79-80):

"Moreover, nothing in the offering plan or the statutory or decisional law of this State supports the sponsor's contention that an executor may not succeed to the right to purchase an apartment concededly possessed by his decedent on the date of the offering plan.

"The offering plan prepared by the sponsor gives the right to purchase the apartment to 'each tenant in occupancy of an apartment in the building as of the date of the presentation of the plan'. The offering plan does not contain any qualification that such 'tenant in possession' must survive until the date the plan becomes effective * * *

"It is observed that the estate of every decedent is liable for the discharge of all obligations and debts incurred by the decedent during his or her lifetime and not discharged at the time of his death.

"If the decedent had any obligation to the sponsor corporation, the estate would not be able to defend such obligation on the basis that it terminated because of the death of the decedent.

"The obligation to administer decedent's estate is implicit in the duty of every personal representative. Any fiduciary who fails in his duty to enforce every valuable right or chose of action possessed by the decedent at the time of his death is subject to a surcharge for such omission. The executor, based on his investigation, has made the judgment that purchase of

---

* Indeed, one nisi prius decision has given the same answer in the case of a rent-controlled tenancy *(see, Freudenstein v 645 Co.,* 128 Misc 2d 635).

this apartment is an appropriate exercise of his fiduciary responsibility."

We view these authorities as persuasive on the issue at bar, and therefore agree with Special Term that the defendants must convey and transfer the shares of stock allocated to cooperative apartment No. 5E at 9411 Shore Road, Brooklyn, New York, to the plaintiff upon payment by the latter of all amounts required to be paid to the defendants.

Finally, we have reviewed the defendants' remaining arguments and find them to be without merit (see, O'Hara v Del Bello, 47 NY2d 363; Mathys v Town of E. Hampton, 114 AD2d 842).

LAZER, J. P., BROWN and KOOPER, JJ., concur.

Order and judgment (one paper) of the Supreme Court, Kings County, dated January 4, 1985, affirmed, with costs.