■ GERTRUDE WEINSTEIN et al., Appellants, v WALTER P. HOHENSTEIN, Respondent, et al., Defendants.—In an action for a declaratory judgment and injunctive relief, the plaintiffs appeal from an order and judgment (one paper) of the Supreme Court, Queens County (Beerman, J.), dated December 6, 1984, which denied their cross motion for summary judgment, granted judgment in favor of the defendant Hohenstein, and dismissed the complaint.

Order and judgment reversed, on the law, cross motion for summary judgment granted, the plaintiff Gertrude Weinstein, as executrix of the estate of Selma Sue Hohenstein, is de-

clared to have the exclusive right, for 90 days from service upon her of a copy of the order to be made hereon, with notice of entry, to purchase the shares of stock in The Beverly House, Inc. which are allocated to apartment 3-U, and the defendants Beverly House Company and The Beverly House, Inc. (1) are directed to accept the plaintiff Gertrude Weinstein's tender of a signed subscription agreement and down payment, if made during the 90-day period, and to act in accordance with the terms of the offering plan, and (2) are enjoined from accepting any other offer for the purchase of those shares during the 90-day exclusive period.

In 1954, Walter and Selma Hohenstein, married for 15 years, rented apartment 3-U at Beverly House under the terms of a lease signed only by Walter. Although the lease later expired, they remained in the apartment as statutory tenants under the rent control law (see, Administrative Code of City of New York § Y51-1.0 et seq.) and both resided there until 1979. In that year they entered into a separation agreement which provided that during her lifetime Selma would have the sole right to use and occupy the apartment, and that upon her death Walter could return and exercise the same right. The agreement also provided that Walter's monthly alimony payments would be applied toward payment of the rent and that his obligation would increase along with the rent. Walter then vacated the apartment and has since resided elsewhere. Selma paid the rent each month and lived alone in the apartment until her granddaughter, the plaintiff Roslyn Weinstein, moved in with her some time before Selma's death in 1984.

After Walter moved out, but before Selma's death, a plan for converting Beverly House to cooperative ownership was accepted for filing by the Attorney-General. Under that plan, each "tenant in occupancy" had the right to purchase the shares allocated to his or her apartment at a discounted "insider" rate. Walter and Selma each attempted to exercise this right, by tendering signed subscription agreements and down payments, but both offers were rejected by the defendant Beverly House Company, the owner of the building, which refused to recognize the right of either to individually purchase the shares.

Selma then instituted this action, in which she sought a declaration that she had the sole right to purchase the shares, and an injunction (1) directing Beverly House Company to accept her tender and (2) prohibiting it from selling the shares to Walter, and money damages. Walter counterclaimed, deny-

ing Selma's contention that she had the sole right to purchase and seeking the same relief for himself. The defendants Beverly House Company and Beverly House, Inc., the cooperative corporation, took no position with respect to these claims and interposed a counterclaim in the nature of interpleader asking the court to make the determination. Selma died during the course of the action and her executrix, Gertrude Weinstein, has been substituted as a plaintiff.

Special Term granted summary judgment to Walter, dismissed the complaint, and directed Beverly House Company and The Beverly House, Inc. to accept Walter's tender. We believe that Selma and not Walter was entitled to purchase the shares.

The Attorney-General's regulations concerning the conversion of occupied apartments to cooperative ownership (13 NYCRR part 18) require that the offering plan, which must be approved and filed before shares in the cooperative may be sold (General Business Law § 352-e), provide for a 90-day exclusive right to purchase in favor of three classes of bona fide tenants: those in occupancy on the date the plan is accepted for filing, those with a right to renew a lease on that date, and those who have a right to continued occupancy on that date (13 NYCRR 18.3 [m] [1] [iii] [a] [1]-[3]). A party's status on the critical date of filing with the Attorney-General determines his or her rights in this regard *(see, Consolidated Edison Co. v 10 W. 66th St. Corp.,* 61 NY2d 341; *Wissner v 15 W. 72nd St. Assoc.,* 58 NY2d 645, *affg* 87 AD2d 120 *for reasons stated in opn at App Div).*

On the critical date, it was Selma, not Walter, who qualified as the tenant in occupancy. By the terms of the separation agreement, she had the exclusive right to occupy the apartment on that date. As a rent-controlled tenant, she also was entitled to remain in occupancy so long as she continued to pay her rent (Administrative Code § Y51-6.0). She thus qualified for the exclusive right to purchase as a bona fide tenant with a right to continued occupancy. Walter, on the other hand, had relinquished his right to occupy the apartment several years before the critical date, and from that time forward could not be considered a "tenant" within the meaning of the rent control law *(see,* Administrative Code § Y51-3.0 [m]), which defines "tenant" in terms of the right of occupancy.

Walter is in the same position as the sublessor in *Cooper v 140 E. Assoc.* (27 NY2d 115) who, by subletting the apartment,

had contractually relinquished his right to occupancy and thus could not be considered a "tenant" under rent control. Walter similarly cannot assert a claim to the exclusive right to purchase superior to that of the occupant of the apartment.

Although the cases which address this issue with respect to rent-stabilized tenancies, particularly *Burns v 500 E. 83rd St. Corp.* (59 NY2d 784), reach a contrary result, they do not apply here. Unlike the rent control law, which includes within its definition of "tenant", "subtenant" and any other person who has a right to occupy (Administrative Code § Y51-3.0 [m]), the rent stabilization code protects the right of a nonresident lessee of record by excluding subtenants from the protection it affords upon conversion (Code of Rent Stabilization Association of New York City, Inc. § 61 [5]). *Burns* explicitly distinguished *Cooper* on this ground, and its holding that the husband who had vacated the apartment was entitled to the exclusive right to purchase was based in part on this provision of the rent stabilization code. *Burns* is therefore inapposite.

Since Selma was entitled to the exclusive right to purchase the shares allocated to her apartment, and that right is descendible *(see, De Christoforo v Shore Ridge Assoc.,* 116 AD2d 123), the plaintiffs are entitled to summary judgment. Lazer, J. P., Bracken, Weinstein and Kunzeman, JJ., concur.