Park House Partners, Ltd., Appellant, v Laurita DeIrazabal, Respondent.

First Department, September 8, 1988

## APPEARANCES OF COUNSEL

*Jeffrey R. Metz* of counsel *(Finkelstein, Borah, Schwartz, Altschuler & Goldstein, P. C.,* attorneys), for appellant.

*Norman Shilling* of counsel *(Shilling & Smoller,* attorneys), for respondent.

## OPINION OF THE COURT

Murphy, P. J.

This action seeking a declaration that the defendant tenant

has not resided primarily at the subject rent-stabilized premises and is, therefore, not entitled to a renewal lease, was commenced by plaintiff landlord after only five months of the tenant's recently renewed lease had elapsed. Although the tenant was provided with 30 days' notice of the action which the landlord concedes is required by section 5 (a) (11) of the Emergency Tenant Protection Act of 1974 (L 1974, ch 576, § 4, as amended) and by section YY51-3.0 (a) (1) (f) of the Administrative Code of the City of New York (see, Sutton Assocs. v Bush, 125 Misc 2d 438, affd 108 AD2d 1106, lv denied 65 NY2d 606; see also, Metzendorf v 130 W. 57 Co., 132 AD2d 262, 269), notice of nonrenewal required to be furnished the tenant between 150 and 120 days prior to expiration of the lease by section 60 of the former Code of the Rent Stabilization Association of New York City, Inc. (now Rent Stabilization Code [9 NYCRR] § 2523.5 [a]; § 2524.2 [a], [b], [c] [2]) as a condition of maintaining a nonprimary residence action for possession was not and could not have been given. The question posed is whether the failure and indeed inability of the landlord to comply with the section 60 notice requirement precluded litigation of the nonprimary residence issue.

It is the plaintiff landlord's contention, that because only declaratory relief was sought, and not immediate possession, section 60 notification was not required. We think that a review of the pertinent cases leads to a contrary conclusion.

It is true that in Central Park S. Assocs. v Hackel (104 AD2d 344) this court held in effect that section 60 notice of nonrenewal was not a condition of seeking a declaration of nonprimary residency. In Hackel, the owner, pursuant to code section 60, had offered and the tenant had accepted a rent-stabilized renewal agreement, but no lease was thereafter executed. The court found that the offer of renewal did not necessarily entitle the tenant to a renewal lease if, as alleged in the owner's complaint, the tenant had not resided primarily in the leased apartment. The court reasoned that only one ultimately entitled to the protections and rights conferred by the Rent Stabilization Law would be entitled to a new lease. Thus, if the tenant were eventually adjudicated a nonprimary resident, the section 60 notice of renewal would not have bound the landlord to issue a renewal lease. The tenant's right of renewal was viewed by the court as a still open question, the determination of which turned upon the tenant's yet to be proven status. The court then went on to express the view that the existence of a valid lease between the parties

would not preclude adjudication of the claimed statutory exemption since regardless of whether there was a lease, a declaration upon the nonprimary residence issue "would have an immediate and substantial impact upon the rights of the parties" *(supra,* at 346). It may be noted that this last part of the decision was entirely unnecessary dicta in view of the court's earlier reasoning that there would only exist a binding renewal commitment if in fact the tenant was a primary resident. It has, nevertheless, now been seized upon as authority permitting a landlord to seek a declaration of nonprimary residence at any time during the lease term.

Although *Hackel (supra)* was never expressly overruled, it is now apparent from subsequently decided cases that the reasoning employed in *Hackel* was erroneous. In one such subsequently decided case, *Golub v Frank,* a declaration of nonprimary residency was sought by a landlord who had not given section 60 notice. The landlord's motion for an order declaring that the subject premises were not the primary residence of the defendant lessee, was summarily denied and the tenant's cross motion for an order directing the landlord to offer a renewal lease was granted on the singular ground that the plaintiff had not complied with Code of the Rent Stabilization Association of New York City, Inc. § 60 by giving the tenant notice of nonrenewal between 150 and 120 days before the end of the lease term. *Golub* was affirmed, without opinion, by this court (106 AD2d 259). Thereafter, the Court of Appeals granted leave (64 NY2d 608) and affirmed (65 NY2d 900) in a memorandum noting pointedly: "where an owner seeks to invoke this ground [nonprimary residence] to deny a tenant his right to a renewal lease, the owner must adhere to the procedure set forth in section 54 (E) of the Rent Stabilization Code, and give notice to the tenant of his intention not to offer a renewal lease not more than 150 and not less than 120 days prior to the end of the tenant's lease term. (Rent Stabilization Code § 60.) Inasmuch as plaintiff failed to observe the foregoing procedures, defendant is entitled to a renewal lease" *(supra,* at 901).

As can be seen, *Golub (supra)* held quite clearly that the failure to provide the tenant with timely notice of nonrenewal was itself fatal to the landlord's request for a declaration. The required notice not having been given the court was unwilling to reach the merits of the primary residence claim much less render a declaration thereon. Contrary to what was said in *Hackel (supra), Golub* held that the section 60 notice require-

ment was in no way contingent on the ultimate adjudication of the tenant's status, and that if indeed the tenant's status was to be adjudicated at all, notice had first to be given. The consequence of not giving notice was that the tenant would be entitled to a renewal lease regardless of whether he or she was a primary resident.

Following *Golub (supra)* was the case of *Elwick Ltd. v Howard.* Like *Golub, Elwick* was a declaratory judgment action commenced by the landlord who sought a determination that the subject apartment was not being used by the defendant tenant as a primary residence and was therefore exempt from rent stabilization. The tenant's motion for summary judgment dismissing the complaint was granted, as in *Golub,* upon the ground that section 60 notice of nonrenewal had not been given. This court affirmed (111 AD2d 73) over a dissent by Justice Asch which noted correctly that there was a conflict between *Elwick* and *Hackel (supra).* Squarely faced with this conflict, highlighted by Justice Asch's dissent, the Court of Appeals affirmed (65 NY2d 1006) for the reasons stated in the majority memorandum, citing in addition its own recent decision in *Golub (supra).* It would appear clear that after the Court of Appeals affirmance in *Elwick, Hackel* was deprived of whatever small measure of precedential force it might have retained after *Golub.*

This conclusion is reinforced by the case of *Crow v 83rd St. Assocs.,* decided after *Elwick (supra). Crow,* too, was a declaratory action, albeit with the tenant as plaintiff, commenced after the landlord had instituted summary eviction proceedings in Civil Court without having served section 60 notice of nonrenewal. The tenant sought a declaration that the landlord's failure to provide section 60 notice precluded the landlord's nonprimary residence challenge to the tenant's right of renewal. After the landlord's holdover proceeding was consolidated with the tenant's declaratory judgment action, the holdover proceeding was dismissed and the tenant was granted summary judgment, the court holding in the context of the declaratory judgment action that the landlord was barred from seeking possession by reason of nonprimary residency when the landlord had not complied with code section 60 by notifying the tenant of its intention not to renew in the fifth month before the end of the lease term. *Crow* was affirmed by this court, without opinion (116 AD2d 1048), and subsequently by the Court of Appeals (68 NY2d 796) which noted in its memorandum decision, "[b]ecause the landlord

failed to serve notice pursuant to section 60 of the Code, the tenant is entitled to a renewal lease by operation of sections 50 and 54 (E) of the Code *(see, Elwick Ltd. v Howard,* 65 NY2d 1006; *Golub v Frank,* 65 NY2d 900)." *(Crow v 83rd St. Assocs., supra,* at 797.)

A number of things become apparent from a review of these cases postdating *Hackel (supra).* First, it is, we think, indisputably clear that it makes no difference whether a landlord elects to litigate the nonprimary residency issue by means of a declaratory judgment action or summary eviction proceeding. Whether the landlord seeks a declaration of nonprimary residency, or directly seeks possession claiming that renewal rights have been forfeited because of nonprimary residency, the ultimate objective is the same, namely, the termination of the rent-stabilized tenancy; it would be idle to pretend that a landlord would not interpose his earlier obtained determination of nonprimary residency to prevent relitigation of the issue in subsequent holdover proceedings. *(See, Sutton Assocs. v Bush, supra.)* For this reason the section 60 notice requirement has been uniformly applied to both declaratory judgment and summary eviction proceedings.

It may be noted that by our affirmance in *Sutton (supra),* we expressly recognized that an action for a declaratory adjudication of nonprimary residency was in effect an "action or proceeding * * * to recover possession" thus calling into play the notice provisions of section 5 (a) (11) of the Emergency Tenant Protection Act of 1974 (L 1974, ch 576, § 4, as amended) (codified at McKinney's Uncons Laws of NY § 8625 [a] [11]), and Administrative Code of the City of New York § YY51-3.0 (a) (1) (f). Having so characterized nonprimary residence declaratory judgment actions, there exists no principled basis for exempting them from the nonrenewal notice provisions of the Rent Stabilization Code, which now go under the general heading of "termination notices" *(see,* current Rent Stabilization Code § 2524.2). This is particularly true after the Court of Appeals decision in *Crow* which held explicitly that the above-cited amendments to the Emergency Tenant Protection Act did not effect the repeal of the Code's "window period" notice provisions. *(Crow v 83rd St. Assocs., supra,* at 797.)

The applicability of the Code notice provisions to declaratory judgment actions has, in any case, been made quite clear by the Court of Appeals in *Golub, Elwick* and *Crow (supra).* Nowhere in those decisions is there a scintilla of support for

the proposition the appellant would have us embrace, that notwithstanding the owner's failure to give notice there still exists a residual entitlement to a declaration. The failure of a landlord to give section 60 notice of nonrenewal has a completely preclusive effect. What the cases since *Hackel (supra)* implicitly recognize is that while rent stabilization may confer upon covered tenants a "panoply" of statutory rights, the most important right and the single right really at issue in nearly all primary residence actions is the right to a rent-stabilized renewal lease. As *Golub* and *Crow* so clearly hold, the landlord's default in the performance of his section 60 notice obligations has the consequence of entitling the tenant to a new lease by operation of law. The issue which would be the subject of litigation is thus precluded. The right to a renewal lease having been determined, the essential aspects of the landlord-tenant relationship will be governed by the lease. Seldom in nonprimary residence actions is there any bona fide dispute over any right conferred by statute other than the right of renewal. Thus, notwithstanding the contrary statements found in the second part of *Hackel,* once the right to a new lease is established there ordinarily exists no justiciable controversy for the court to address. The present case is no exception, for although the landlord makes the usual boilerplate request for a broad declaration of exemption from rent stabilization, the only specific relief sought is a declaration to the effect that "plaintiff need not offer a renewal lease agreement to defendant, nor is defendant entitled to demand such a renewal lease agreement by virtue of the fact that defendant does not occupy the subject apartment as a primary residence."

The conclusion most readily to be drawn from a consideration of *Golub, Elwick,* and *Crow (supra),* is that plaintiff's failure to serve the defendant with notice of nonrenewal precludes consideration of its nonprimary residence allegations.

There are, of course, practical reasons why nonprimary residence actions should be conditioned on "window period" notice of nonrenewal and should, therefore, not be litigated until the end of the lease term. As noted, the central question in these actions is whether a renewal lease need be offered. Manifestly, this is a question which is not necessary for courts to address until renewal time. Only after notice of nonrenewal has been given and the tenant has indicated his intention to remain at the premises nonetheless, does there exist a dispute

justifying resort to the courts. Moreover, it is generally desirable for a court considering the issue of nonprimary residency to be able to evaluate the entire history of the tenancy to the time of renewal.

To adopt the position urged by appellant would leave open the possibility that a landlord might over the course of the lease term commence numerous unjustified nonprimary residence actions, on each occasion maintaining that some new development established the temporary nature of the tenant's residency. The potential for abuse would be heightened by the fact that the expense of defending these declaratory actions would invariably fall upon the tenant. The reciprocity provisions of Real Property Law § 234 would not be applicable because the action would not concern the obligations of the lease, but the statutory right of renewal. (See, *Cier Indus. Co. v Hessen,* 136 AD2d 145.) By contrast, assuming the existence of a standard attorney fee provision in the lease, attorney's fees could be awarded to the prevailing party in nonprimary residence holdover proceedings commenced at the expiration of the lease term since the issue in such proceedings would ultimately be whether the tenant had fulfilled its contractual obligation to vacate the premises at the conclusion of the lease period *(supra).*

Finally, it is not in the interests of judicial economy to make possible numerous actions where one proceeding at the end of the lease term would be perfectly adequate.

The notice provisions of the Rent Stabilization Code establish a perfectly fair and sensible time frame for the orderly adjudication of nonprimary residence claims. A review of the statutory and decisional law, as well as important considerations of policy, discloses no sound basis for waiving the "window period" notice requirement simply because an owner labels his action as one for a declaration.

Accordingly, the order of the Supreme Court (Martin B. Stecher, J.), entered July 16, 1987, which, *inter alia,* granted the defendant tenant's cross motion for summary judgment dismissing the declaratory judgment action, should be affirmed, without costs and without disbursements.

SANDLER, CARRO, MILONAS and SMITH, JJ., concur.

Order and judgment (one paper), Supreme Court, New York County, entered on or about July 16, 1987, unanimously affirmed, without costs and without disbursements.