■ 615 COMPANY, Appellant, v GENE E. MIKESKA, Respondent.—Order, Supreme Court, New York County (C. Beauchamp Ciparick, J.), entered on March 15, 1988, affirmed, without costs or disbursements. (See, Park House Partners v DeIrazabal, 140 AD2d 84.) Concur—Carro, Milonas and Ellerin, JJ.

Sullivan, J. P., dissents in a memorandum as follows: The issue presented is whether a landlord may, by declaratory judgment action, challenge a tenant's use of the rent-stabilized premises as a secondary residence at any time during the lease term. I respectfully submit that the defendant tenant's theory, adopted by the motion court, that an action brought to declare a statutory exemption to the Rent Stabilization Law is premature unless brought within the 120-150-day period before expiration of the lease, is logically unsupportable and misconstrues the law insofar as it relates to nonprimary residence.

A justiciable controversy exists at any time a lease is in effect because the issue of statutory coverage or exemption is present throughout the lease term. This theory finds support in several cases which have been decided by this court and affirmed by the Court of Appeals. In *Wissner v 15 W. 72nd St. Assocs.* (87 AD2d 120, 124-125), this court observed, "Accord-

ingly, on the critical date of the presentation of the offering plan for co-operative conversion, the plaintiff was the lessee of record of an apartment subject to rent stabilization whose status, as such, had not theretofore been challenged by the landlord nor changed by eviction action or proceeding, or by a determination, administrative or judicial, that the premises were not his primary residence." The *Wissner* determination was unanimously affirmed by the Court of Appeals (58 NY2d 645). If the landlord in the instant matter is not permitted to challenge defendant's nonprimary residency status, and his status remains unchallenged on a date that a formal offering plan ("Black Book") is accepted for filing, defendant would, arguably at least, have the right to claim entitlement to purchase at the insider price. This is a prospect which should be neither encouraged nor condoned, given the *Wissner* caution that a determination of nonprimary residency status must be made before that critical date in order rightfully to refuse to honor the wrongful tender of a purchase or subscription agreement.

Acceptance of defendant's proposition would effectively diminish an owner's rights in his property and foreclose him from challenging the status of a tenant who is not maintaining the apartment as his primary residence. The tenant would be allowed to hold on to the apartment for speculation in the hopes of a conversion to cooperative or condominium ownership prior to the onset of the 120-150-day window period. Such a proposition is contrary to the legislative scheme. As the Court of Appeals noted in *De Kovessey v Coronet Props.* (69 NY2d 448, 455):

"The legislative declaration of purpose reveals that enactment was in response to a 'public emergency requiring the regulation and control of residential rents and evictions' [citation omitted]. As the Legislature declared, the statute was intended to protect 'tenants in occupancy,' particularly the elderly and disabled, from 'unjust, unreasonable and oppressive rents', 'uncertainty, hardship and dislocation in connection with the conversion process', and other disruptive practices affecting all tenants during the version process' [citation omitted]. At the same time, the Legislature sought to encourage housing conversion in an orderly manner so as to facilitate the preservation, stabilization, and improvement of neighborhoods [citation omitted]. The statute is based upon a legislative balancing between the preservation of a stable affordable housing market and the owner's right to pursue legitimate objectives.

"There is no evidence nor is there any express provision showing a legislative intent to further diminish or encumber an owner's right in property as is urged by the respondents and that was granted by the courts below. Such a significant alteration of rights should not arise from judicial proclamation but should come from clear legislation, grounded in appropriate constitutional and policy considerations."

As the Court of Appeals recognized in *De Kovessey (supra),* which involved claims by estates to purchase at the insider price, the cooperative and condominium conversion laws were meant to protect "tenants in occupancy", not to provide a windfall profit for a tenant who is not using the apartment as his primary residence. Here, as in *De Kovessey,* defendant is not in "actual possession and occupying the unit" *(supra,* at 457).* Yet, under the court's decision, the landlord cannot challenge this tenancy until between 120 and 150 days prior to the expiration of his lease, thus allowing defendant to reap a windfall by the resale of the apartment in the event of a conversion. Such a result cannot be justified on either a legal or equitable basis.

I am aware that in a recent decision *(Park House Partners v DeIrazabal,* 140 AD2d 84), this court, focusing, in part, upon what it perceived to be a potential for abuse, held that a declaratory judgment action challenging a tenant's primary residency must be commenced within the 120-150-day window period. I am also mindful of the deference to be accorded stare decisis. In ruling as it did in *Park House,* however, the court overlooked recent decisions of this court holding to the contrary. In *McAfee v Winters* (107 AD2d 1095), this court affirmed an order permitting the maintenance of a declaratory judgment action seeking a determination that an apartment was exempt from the Rent Stabilization Law, as amended, on the grounds of nonprimary residence, notwithstanding that the tenant was entitled to a renewal lease due to the owner's failure to serve a notice of nonrenewal during the 120-150-day period prior to the expiration of the lease. Similarly, in *Peck v Wolf* (140 AD2d 1014), this court affirmed a determination (NYLJ, Apr. 10, 1987, at 12, cols 4-5) which expressly approved of the commencement of a declaratory judgment action with respect to a nonprimary residence, notwithstanding the failure to serve a window period notice of nonrenewal. *(See also, Central Park Assocs. v Hackel,* 104 AD2d 344.)

Moreover, the potential for abuse cited by this court in *Park House (supra)* does not exist in the instant matter. Nor, for that matter, did it exist there. As Justice Stecher noted in his

*Park House* opinion at nisi prius: "Although this proceeding has now terminated favorably to the defendant, it is clear that there was probable cause for its initiation. The deposition testimony of the defendant, as shown by plaintiff's moving papers, gives good cause to believe that defendant was not a primary resident of the disputed apartment. Defendant may not sustain her cause of action as malicious prosecution without this essential element."

Defendant argues that the landlord has engaged in an unrelenting campaign to evict him. Thus, he stresses the dismissal of the prior Civil Court summary proceeding against him and subsequent affirmance by the Appellate Term. The action sought recovery of possession of the subject apartment upon the grounds of nonprimary residence. That proceeding was dismissed by the Civil Court because the predicate notice of nonrenewal and termination was defective. As a result, the landlord was compelled to offer a renewal lease, and this action was thereafter immediately commenced. Thus, the landlord's litigation efforts cannot be construed as vexatious. The reality of the matter is that in both the Civil Court summary holdover proceeding and in the instant matter, defendant has effectively forestalled any inquiry into the question of his primary residence. Were it not for the technical defect in the predicate notice brought within the context of the prior Civil Court summary holdover proceeding, the landlord would have had the opportunity to reach the merits in that proceeding.

Thus, the controversy herein is ripe for adjudication, and our decision in *Park House (supra)* notwithstanding, the motion to dismiss for failure to state a cause of action should be denied.