OPINION OF THE COURT
David B. Saxe, J.
De Kovessey v Coronet Props. (69 NY2d 448 [1987]) declared that when a rent-controlled tenant dies during the effective *424 period of a cooperative conversion plan, the tenant’s estate is not entitled to purchase the shares allocated to the tenant’s apartment at the insider price. Presented here is the question of whether an estate has the right to purchase where the decedent was a rent-stabilized tenant with a written lease, if the tenant dies during the plan’s effective period, after signing a no-buy pledge.
The facts, which are not disputed, are as follows: Celia Brandes resided at 25 Central Park West, apartment 4W, under a lease which expired November 30, 1989. During her tenancy, the owner began proceedings to convert the building to condominium ownership. In response to the sponsor’s 1986 "red herring”, Brandes, along with other tenants, signed a no-buy pledge. On September 10, 1987, the plan was accepted for filing by the Attorney-General. On December 4, 1987, Brandes died without having exercised her insider’s right to purchase.
Roberta Brandes Gratz, Brandes’ daughter, was appointed coexecutrix of Brandes’ estate. Since the exclusive period for tenants to purchase had been extended through May 15, 1988, on May 9, 1988, Gratz submitted an executed purchase agreement to the sponsor, which the sponsor rejected. The sponsor did so in reliance upon a memorandum promulgated by the Office of the Attorney-General, which advised that "estates are not bona fide tenants in occupancy and therefore sponsors do not have to offer them the right to buy.”
This action was then commenced by the estate, for specific performance of the sponsor’s obligations to convey the apartment, and for money damages. The sponsor has now moved for summary judgment dismissing the complaint and granting judgment on their counterclaims for a declaratory judgment and counsel fees. The estate has cross-moved for summary judgment on its complaint.
In De Kovessey (supra, at 455, 456) the Court of Appeals explained that "[a]n offer to sell shares in a cooperative conversion confers upon the tenant-offeree a power of acceptance which continues until the offer is accepted or otherwise terminated”, and that "an offeree’s power of acceptance is terminated, making acceptance impossible, when the offeree dies”. It held that "the critical component to establishing an entitlement to exercising the insider rights of a 'tenant in occupancy’ is a landlord-tenant relationship coupled with actual use and possession at the time the plan is accepted for filing” (69 NY2d, supra, at 457), and concluded that "none of *425 the estates before us on these appeals could be said to have been 'tenants in occupancy’ since none was using or occupying the unit at the time the plan was accepted for filing” (supra, at 457-458).
While the court specifically noted that "these were not lease cases” (supra, at 457), the existence of a lease in the case now before me does not, I conclude, remove it from the application of the broad De Kovessey rule.
I recognize that in a case whose facts are similar to those now before me, the Second Department required the sponsor to sell the allocated shares to the deceased tenant’s estate (see, De Christoforo v Shore Ridge Assocs., 116 AD2d 123 [2d Dept 1986]). I decline to follow that case because I believe that much of its reasoning is brought into question as a result of the subsequent De Kovessey decision, and because certain of its reasoning stands in opposition to a holding of the Appellate Division, First Department.
In De Christoforo (supra) a rent-stabilized tenant with a written lease died after the offering plan was declared effective, without having exercised her right to purchase. Her estate then, during the effective period, sought to purchase the shares allocated to her apartment. In upholding the estate’s right to purchase, the court noted that " 'A lease for a term of years is not terminated by the death of the lessee prior to the expiration of the term; the lease passes as personal property to the estate which remains liable for payment of the rent’ ” (116 AD2d, supra, at 126, quoting Schnee v Jonas Equities, 109 Misc 2d 221). Again quoting Schnee v Jonas Equities, the court added that " '[T]he estate replace[s] the deceased tenant as a party to the lease by operation of law’ ” (116 AD2d, supra, at 126). With these enunciated rules in mind, the court relied upon exactly those trial court rulings which were subsequently reversed by the Court of Appeals in De Kovessey (see, 116 AD2d, supra, at 128-129) to hold that the estate of a deceased tenant is a "tenant in occupancy,” entitled to purchase.
I conclude that De Christoforo (supra) can no longer be relied upon for the proposition that an estate steps into the shoes of, and retains all rights of a deceased lessee. First, it is clearly incorrect to the extent it relied upon the trial court decision later reversed by De Kovessey (supra). Furthermore, insofar as De Christoforo held that all the decedent’s leasehold rights pass to the estate, I find that authority in this Depart *426 ment does not confer such broad rights upon the estate, with regard to a leasehold interest. Real Property Law § 236 permits an executor of the estate of a deceased lessee to request that the landlord permit an assignment of the lease; if the landlord unreasonably refuses to consent, the lease is deemed terminated and the estate is no longer liable to pay rent. In Joint Props. Owners v Deri (113 AD2d 691 [1st Dept 1986]) the executor of a deceased tenant’s estate sought to assign the lease to himself, individually. When the landlord rejected the request, the executor, who was the son of the deceased tenant, took physical possession of the apartment. The First Department ruled that the landlord was entitled to a judgment of possession of the apartment:
"It is of course true, as Appellate Term noted, that a lease for a term of years is not terminated by the lessee’s death prior to the lease’s expiration. (Remford Corp. v Rosenfeld, 274 App Div 769; Schnee v Jonas Equities, 109 Misc 2d 221 [App Term, 2d Dept]; 2 Rasch, New York Landlord and Tenant Summary Proceedings § 1016 [2d ed].) In such cases the leasehold interest passes as personal property to the estate (EPTL 13-1.1), which remains liable for the payment of rent. (Schnee v Jonas Equities, 109 Misc 2d, at p 222.) Thus, an executor has the right, until the expiration of the lease, to possession of the demised premises in his capacity as representative of the deceased tenant’s estate. (Remford Corp. v Rosenfeld, 274 App Div 769, supra.) Though the leasehold interest is part of the estate an executor does not, however, have the unrestricted right to sublet the premises or assign the lease. A residential lease is not a property right that devolves upon death to be passed from one generation to another. Subject to constitutional and statutory limitations, a landlord has a basic right to select those persons who will occupy the demised premises.
"The right of the estate of a deceased tenant to assign or sublet is exclusively controlled by Real Property Law § 236, which, as Appellate Term correctly noted, was intended to benefit the estate of a deceased tenant by relieving it of any further leasehold obligations if the landlord, upon a request to consent to an assignment or sublet, either terminates the lease or unreasonably refuses to consent. (See, 1965 NY Legis Ann, at 357-358.) Of course, if the landlord’s refusal to consent is reasonable the lease continues in full force and effect and the estate remains liable for the deceased tenant’s leasehold obligations. Thus, it is clear that the sole and exclusive remedy available to the estate of a deceased tenant for a *427 landlord’s unreasonable withholding of consent is a release from any further rental obligations. There is no authorization, statutory or otherwise, for the executor of an estate, upon a landlord’s rejection of a request to assign, to occupy an apartment in his individual capacity. ” (Joint Props. Owners v Deri, 113 AD2d 691, 693-694, supra [emphasis supplied]; see also, Remford Corp. v Rosenfeld, 274 App Div 769, 770.)
It is clear that while an estate retains the right to use the apartment of the deceased to wind up its affairs, no one else has the right to actual personal use of the apartment without the consent or approval of the landlord.
The conversion plan in question here made the offer to purchase shares only to bona fide tenants in occupancy, as the sponsor is required to do under General Business Law § 352-eeee. Although the estate of a deceased lessee retains the leasehold interest, it is clear from Joint Props. Owners v Deri (supra) that the estate’s rights do not include that of personal occupancy of the apartment by any individual representing the estate. Absent such a right, I do not believe that an intangible entity such as an estate can be said to physically occupy the apartment so as to attain the status of a bona fide tenant in occupancy. Indeed, in Rubenstein v 160 W. End Owners Corp. (145 AD2d 390 [1st Dept, Dec. 29, 1988]), the court considered a claimed right to purchase by an estate where the decedent had died prior to the effective date of the conversion plan. It explained that under De Kovessey (supra) "there must be actual use and possession of the premises” and that "storing personal property in an apartment does not constitute the sort of actual use and possession contemplated by the Court of Appeals in De Kovessey” (Rubenstein v 160 W. End Owners Corp., supra, at 392).
Consequently, I conclude that the estate’s accession to certain rights under decedent’s lease does not include the right of a bona fide tenant in occupancy to purchase the shares allocated to the subject apartment. My colleague, Madame Justice Altman, arrived at the same conclusion in Chanin v Century Apt. Assocs. (Sup Ct, NY County, Nov. 22, 1988, index No. 14101/88).
In addition to relying on the rights under the lease, the estate raises in support of its right to buy the fact that prior to her death the decedent had executed a no-buy pledge. The pledge, it is argued, demonstrates the tenant’s intent to purchase. The estate seems to imply that if an intent to purchase *428 is established, the tenant attains the status of a de facto purchaser, rendering the actual execution of a purchase agreement a mere formality which the tenant’s estate may then fulfill.
I do not believe that a tenant’s intent to purchase prior to her death entitles the tenant’s estate to purchase the apartment if the tenant dies before she acts on that intent. Even if that were so, however, the tenant’s signing of a no-buy pledge simply does not establish such an intent to purchase. The no-buy pledge signed by plaintiff’s decedent states that its purpose is "to obtain the most favorable terms possible, including but not limited to the best possible price per apartment, most adequate reserve fund, protection of lease and other rights for non-purchasers, and the most appropriate maintenance standards together with the most reasonable maintenance charges.” As this recitation illustrates, there are many reasons why a tenant might sign a no-buy pledge. Such pledges benefit not only tenants planning to buy who want the best possible deal; they also benefit tenants who contemplate remaining as tenants but would like to ensure for example that the reserve fund is substantial, that building maintenance standards are high, and that any necessary building improvements are accomplished without cost to themselves.
Accordingly, the defendants’ motion is granted to the extent that summary judgment is granted on their first cause of action for a declaration that the plaintiff is not entitled to purchase the subject apartment pursuant to the condominium offering plan, and the complaint is dismissed. Plaintiff’s cross motion is granted only to the extent of dismissing the defendants’ second counterclaim for legal fees, in that neither their papers nor their exhibits offer any support for such relief.