■ STAHL ASSOCIATES CO., Appellant, v PIERSON G. MAPES et al., Respondents. — Order, Supreme Court, New York County (Edward J. Greenfield, J.), entered September 4, 1984, denying plaintiff's motion for summary judgment on its first and second causes of action as against defendants Pierson G. Mapes and Patricia C. Mapes (the Mapes), granting the said defendants' cross motion to dismiss the complaint as against them, and denying plaintiff's motion for summary judgment seeking to recover attorney's fees from the Mapes, unanimously modified, on the law, to deny the Mapes' cross motion to dismiss the complaint, and otherwise affirmed, without costs.

Stahl Associates Co. (Stahl), is the landlord of premises 404 East 55th Street, Manhattan. The Mapes were the prime tenants of record of apartment 8E. Defendant Harold Barr (Barr) was an undertenant of the Mapes, who subleased the apartment for a period of two years, 6½ months, pursuant to a written sublease agreement with the consent of the landlord. The Mapes' original lease ran from October 1976 for a two-year term.

The lease was renewed through January 31, 1982, pursuant to a renewal agreement. The sublease to Barr, executed with the landlord's consent on June 11, 1979, ran for a two-year, 6½-month period from June 15, 1979 to December 31, 1981.

In August and September 1981, the landlord submitted a lease extension agreement to the Mapes for a three-year period ending January 31, 1985. The Mapes indicated their intention to renew the lease for the three-year term, provided the sublease to Barr could be extended for the same period. Stahl denied permission for the sublease renewal. The Mapes were advised by Stahl that Barr was to quit the premises by December 31, 1981. The Mapes responded by notice dated December 29, 1981, that they would terminate the "current lease as specified, on 1/31/82."

On January 20, 1982, prior to the expiration of the lease to the Mapes, Stahl applied to the Conciliation and Appeals Board (CAB) for permission to deny a renewal lease to them as prime tenants on the ground that the apartment was not their primary residence. The application stated that Barr "is still in residence" and "[p]roceedings have been instituted in the Civil Court". The CAB granted Stahl's request. Accordingly, the lease expired pursuant to its terms on January 31, 1982.

On January 27, 1982, Stahl served the Mapes with a "Notice to Cure", informing them that Barr was holding over and demanding cure by February 10, 1982. A "Notice of Termination", dated February 19, 1982, was also served upon the Mapes, purporting to terminate their tenancy effective March 4, 1982 for failure to comply with the "Notice to Cure". Stahl's summary proceedings to evict Barr as a holdover continued for approximately one year, without success. The holdover proceedings were defended by Barr and not the Mapes. That proceeding was dismissed, as was a subsequent eviction proceeding by Stahl against Barr. No moneys were collected from Barr, despite a stipulation to pay use and occupancy and an offer of payment by Barr.

This ejectment action was brought on or about April 7, 1983 against both Barr and the Mapes, seeking (1) immediate possession of apartment 8E, (2) damages equal to the reasonable value of use and occupancy of the apartment for the period after February 1982 up to the time of removal or eviction, and (3) payment of attorney's fees.

Special Term granted summary judgment to Stahl against Barr on the first two causes of action, and dismissed the complaint against the Mapes upon the ground that their liability and right to occupancy of the apartment terminated on the expiration of the prior lease on January 31, 1982. The court

stated: "Plaintiff, having obtained an order from the C.A.B. that granted plaintiff rights to refuse Mapes a renewal ended the privity between the parties and an action against Mapes for damages or rents due does not lie."

Plaintiff contends that, as prime tenants, the Mapes are obligated to pay the reasonable value of the use and occupancy of the premises for the period their subtenant Barr held over beyond the term of the major lease and the sublease. Paragraph 24 of the major lease provides in part: "Upon the expiration or other termination of the term of this lease, Tenant shall quit and surrender to Landlord the demised premises, broom clean, in good order and condition, ordinary wear excepted, and Tenant shall remove all its property. Tenant's obligation to observe or perform this covenant shall survive the expiration or other termination of this lease."

A surrender by operation of law occurs when the parties to a lease do some act inconsistent with the subsisting relationship of landlord and tenant, indicating that they have both agreed to a surrender (*Gray v Kaufman Dairy & Ice Cream Co.,* 162 NY 388). This generally occurs when a tenant abandons possession during the term, indicating his intention to yield his interest, and the landlord retakes possession in such manner as to show he intends to reassume dominion and control (*Kottler v New York Bargain House,* 242 NY 28; *Bedford v Terhune,* 30 NY 453).

Despite the arguments of counsel and the language of paragraph 24 of the lease, bespeaking a "surrender" at the expiration of the lease by its terms, this is not, strictly speaking, a surrender. At the expiration of the term the tenant leaves because his rights to possession have expired. There is no surrender of the term, because there is no estate to be reconveyed (2 Rasch, N Y Landlord & Tenant, Summary Proceedings § 868 [2d ed]).

Thus the issue here is not one of surrender. The Mapes were not in possession. Their lease had terminated. Stahl was unable to retake possession only because Barr remained in possession in violation of both his sublease and the Mapes' overlease. When Stahl served the Mapes with a notice to cure and a notice of termination and they did not respond, it was clear they asserted no right to possession or to a continued term.

It is plain that the Mapes' right to possession as well as that of Barr had terminated, both by the terms of the lease and sublease and by virtue of the action of the landlord in obtaining the CAB order. Since paragraph 24 of the lease obligated the Mapes to "quit and surrender" the premises "broom clean", at the expiration or other termination of the lease, they had no right to

possession of the premises as against either the landlord or Barr. Their lease was at an end.

The law is clear that upon termination of a lease, it is the obligation of the tenant to remove the undertenant. It is well settled that a wrongful holding over by a subtenant is to be deemed the same as a wrongful holding over of the tenant sublessor (*Syracuse Assoc. v Touchette Corp.*, 73 AD2d 813; *Goodwin v Humbert*, 216 App Div 295, *appeal dismissed* 244 NY 584). A covenant such as that contained in paragraph 24 of the major lease requires delivery of possession of the premises at the end of the term without the subtenant in possession, even though the landlord consented to the sublease (*Sullivan v Ringler & Co.*, 59 App Div 184, *affd* 171 NY 693), and even though the subtenant holds over without the tenant's authority and against his wishes (*Manheim v Seitz*, 21 App Div 16).

Thus, Special Term erred in dismissing the complaint as against the Mapes because the refusal of Stahl to renew the lease "ended the privity between the parties and an action against Mapes for damages or rents due does not lie."

However, this does not entitle the landlord to summary judgment as against the Mapes. There are plainly triable issues by reason of the acts of the parties.

The landlord immediately instituted dispossess proceedings against Barr to remove him. Although Barr's defense was that he was an assignee of the lease rather than a subtenant, and the landlord's right to possession was clear, the proceeding against Barr was dismissed after 11 months. The Mapes' lease and the landlord and tenant relationship came to an end by the terms of the lease and the CAB order entitling the landlord to possession after determining that the landlord had no obligation to offer the Mapes a renewal lease.

Whether the Mapes could have brought a dispossess proceeding against Barr is not clear. The Mapes no longer had a lease or right to possession and the landlord immediately instituted such a proceeding. Moreover, the landlord entered into a written stipulation with Barr for payment of accrued use and occupancy during the course of the holdover proceeding. However, the landlord never enforced that stipulation. He also rejected an offer by Barr to pay the amount due, allegedly for fear that it might be concluded that Stahl "had accepted defendant Barr as a tenant in his own right." Plainly, the landlord was acting in his own right in seeking to remove Barr from the apartment. Thus, this case does not involve the simple proposition of a tenant's liability for the holding over of a subtenant (*Tefft v Apex Pawnbroking & Jewelry Co.*, 75 AD2d 891). Nor is this a

case in which the tenant merely removed and left the subtenant in possession (*Manheim v Seitz, supra*).

Here, with knowledge that the subtenant remained in possession, landlord accepted the Mapes' refusal to accept· landlord's offer of a renewal of the lease. Moreover, landlord affirmatively acted to end any vestige of the landlord-tenant relationship by obtaining the CAB order confirming the determination, as a matter of law, and by moving promptly to enforce its rights. In effect, although strictly there was no surrender, the landlord accepted a reconveyance of the Mapes' leasehold interest (*Levitt v Zindler*, 136 App Div 695).

There is a triable issue as to whether landlord accepted control and possession of the premises upon termination of the lease (*Bedford v Terhune, supra; Centurian Dev. v Kenford Co.*, 60 AD2d 96, 100, *appeal dismissed* 45 NY2d 772). Although the cases cited are surrender cases, the same principles should apply here. The landlord's efforts to remove the subtenant are evidence that he was acting on his own behalf and not that of the tenant (*see, Matter of Jaroslow v Lehigh Val. R. R. Co.*, 23 NY2d 991). The posttermination conduct of the landlord may estop him from asserting a claim against the Mapes. He accepted a termination of the lease and immediately instituted proceedings in his own behalf to evict Barr, and refused to accept payment from Barr albeit Barr was bound by stipulation to make such payment and offered to do so.

There is a triable issue as to whether the Mapes are liable for use and occupation for that period of time after the termination of the lease up until the removal of Barr. Concur — Kupferman, J. P., Ross, Asch and Fein, JJ.