*294 OPINION OF THE COURT
Nat H. Hentel, J.
Petitioner landlord brings this holdover proceeding against respondent tenant, Professional Surgical Supply Co., Inc. (PSS), and its subtenant Space Lease, Inc., to recover possession of commercial premises located at 84-02 Roosevelt Avenue, Jackson Heights, New York.
The entire building of approximately 8,000 square feet was leased to PSS. PSS in turn sublet 2,000 square feet of this space to Jairo A. Lopez.
On September 21, 1983, Jairo Lopez assigned his sublease to respondent undertenant Space Lease, Inc. Space Lease, Inc. is in the business of dividing up and partitioning spaces to subsublessees who conduct other businesses in these areas of the subject premises.
The parties now have been involved in fairly lengthy litigation.
On February 22, 1985, petitioner commenced a nonpayment proceeding against PSS. PSS thereupon filed a petition under Bankruptcy Act chapter 11, which had the effect of staying the nonpayment proceeding. On April 17, 1985, the nonpayment proceeding was dismissed.
On September 11, 1985, the decision of the Bankruptcy Court was rendered. In the decision, Judge Párente granted PSS a 90-day stay of the surrender order. On December 10, 1985, the surrender order expired.
PSS through its attorney consented by stipulation to a final judgment of possession for petitioner dated February 10, 1986, with a stay of the issuance of the warrant of eviction to March 31, 1986. The final judgment also reflects that the possessory judgment is granted as to PSS only. The said judgment is therefore not binding on Space Lease, Inc., as sublessee of the premises.
On April 8, 1986, the Bankruptcy Court issued an order vacating the prior stay of proceedings to recover possession of the leased premises.
Petitioner then commenced this holdover action against PSS and Space Lease, Inc., which was heard before this court on April 16, 1986. Petitioner now seeks a possessory judgment against PSS and Space Lease, Inc.
*295 I. WHAT IS THE RELATIONSHIP BETWEEN PETITIONER AND PSS?
(A) BANKRUPTCY
"It is well settled that an adjudication, in itself absolves the bankrupt from no agreement, terminates no contract, and discharges no liability. Thus, it has been held that the bankruptcy of a tenant in and of itself does not terminate a lease * * * Broadex Realty Corp v Jones (AD1 1924) 211 AD 96, 206 NYS 602; Witthaus v Zimmerman (AD1 1904) 91 AD 202, 86 NYS 315; Woodworth v Harding (AD4 1902) 75 AD 54, 77 NYS 969.” (See, 2 Rasch, New York Landlord & Tenant—Summary Proceedings § 710, at 161, n 2 [2d ed].)
Petitioner’s exhibit No. 1 in evidence is the prime lease. In paragraph 16, it states "lease may be cancelled by Landlord by the sending of a written notice to Tenant within a reasonable time after * * * (1) the commencement of a case in bankruptcy or under the laws of any state naming Tenant as the debtor”. Lease provisions such as these are no longer given effect since the Bankruptcy Reform Act of 1978 (11 USC § 1 et seq.).
The Bankruptcy Reform Act of 1978, effective October 1, 1979, provides "Notwithstanding a provision in an * * * unexpired lease, or in applicable law, an * * * unexpired lease of the debtor may not be terminated or modified, and any right or obligation under such * * * lease may not be terminated or modified, at any time after the commencement of the case solely because of a provision in such * * * lease that is conditioned on — (A) the insolvency or financial condition of the debtor at any time before the closing of the case; (B) the commencement of a case under this title; or (C) the appointment of or taking possession by a trustee in a case under this title or a custodian before such commencement.” (11 USC § 365 [e] [1].) Therefore, the filing for chapter 11 in bankruptcy did not sever the landlord-tenant relationship.
(b) STIPULATION
On February 10, 1986, PSS and petitioner entered into a stipulation whereby PSS agreed to a final judgment of possession in favor of petitioner. The respondent undertenant, Space Lease, Inc., contends that the prime tenant voluntarily surrendered possession of the premises to petitioner by consenting to a final judgment of possession without obtaining the consent of the subtenant.
The stipulation entered into on February 10, 1986 was *296 signed two months after the 90-day stay of the surrender order of the Bankruptcy Court had expired. The decision of the Bankruptcy Court had already called for the prime tenant to relinquish possession of the property. As such, the expiration of the stay of the surrender order merely allowed petitioner to use the legal channels open to him to obtain possession of the premises. In essence, prime tenant defaulted in making some of its rental payments. The Bankruptcy Court gave the PSS trustee-in-bankruptcy 60 days to assume or reject the lease. The lease was rejected, and after the additional 90-day stay period came to an end, landlord became entitled to bring any proceedings necessary to obtain possession of the premises as against PSS.
The facts adduced at trial do not warrant any finding of collusion between petitioner and PSS in their signing of the stipulation. There was no evidence that PSS and petitioner joined together voluntarily to surrender the lease term and thus terminate the rights of Space Lease, Inc. to its subtenancy. As a matter of fact, PSS attempted in vain to protect its tenancy in the Bankruptcy Court by asking for an additional period of time within which it could assume its lease, thus continuing its time as a lessee.
PSS defaulted on payment of its rent. The Bankruptcy Court held that possession of the premises would have to be surrendered by PSS. When PSS failed to pay its rent, it substantially breached its lease. Such nonpayment of rent could have resulted in termination of the prime lease by operation of law thereby terminating the subtenancy.
The stipulation herein served as a shortcut taken by PSS on the eve of trial. It had already breached its lease, and the next step would have been a trial, and possibly an eviction. The stipulation merely avoided the need for further litigation. The surrender of the lease by PSS, therefore, occurred by operation of law. It was not a voluntary surrender.
II. HOW IS A SUBLEASE AFFECTED ONCE THE PRIME LEASE HAS TERMINATED?
"The basic rule is that a sublease is dependent on and limited by the terms and conditions of the main lease from which it is carved. A subtenancy may thus be terminated by the expiration of the term of the lessee or a re-entry by the landlord for a condition broken. (Eten v Luyster, 60 NY 252; Hoffman Brewing Co. v Wuttge, 234 NY 469; Ashton Holding *297 Co. v Levitt, 191 App Div 91; New York Rys. Corp. v Savoy Assoc., 239 App Div 504; Metropolitan Life Ins. Co. v Hellinger, 246 App Div 7, affd 272 NY 24; World of Food v New York World’s Fair 1964-1965 Corp., 22 AD2d 278; 1 Rasch, New York Landlord & Tenant—Summary Proceedings [2d ed], §§ 234, 246.)” (Precision Dynamics Corp. v Retailers Representatives, 120 Misc 2d 180, 181 [Civ Ct, NY County].)
1 Rasch, New York Landlord & Tenant — Summary Proceedings (§ 234, at 299 [2d ed]) clearly states: "Since a sublease is carved out of the paramount lease between his sublessor and the paramount landlord, the sublease is dependent on the paramount lease for its existence. By necessity, therefore, the rights of the subtenant may be limited by the terms of the paramount lease.”
In Bove v Coppola (45 Misc 636, 637) the proposition is succinctly stated "where the principal lease comes to an end by an act done within its very terms, the subtenant’s right of possession falls with it.”
Although a surrender of the main lease by operation of law normally causes the subtenancy to fall as well, in this case the subtenant, Space Lease, Inc., was not a party to the stipulation, and therefore was not bound by its terms. Thus, the court now has before it a holdover proceeding brought by petitioner landlord against its former tenant PSS, and its subtenant Space Lease, Inc., wherein PSS defaulted in appearing. On the basis of these facts, it would seem that the tenancy of PSS has already been terminated by operation of law. What then is the status of the proceeding against the subtenant?
"[I]n an ordinary subtenancy, a subtenant is neither in privity of contract nor in privity of estate with the landlord * * * Tefft v. Apex Pawnbroking & Jewelry Co., 75 AD 2d 891, 428 NYS 2d 52 (2d Dept 1980).” (3 Morris, Fribourg & Gerstein, New York Practice Guide, Real Estate, Landlord-Tenant Leasing § 28.01 [2] [1986].)
III. HOW DOES LANDLORD REGAIN POSSESSION FROM SUBTENANT?
"There is no conventional relation of landlord and tenant between a paramount landlord and a subtenant. Therefore, on principle, a paramount landlord cannot bring summary proceedings against a subtenant to remove him from possession. [East Park St. Corp. v Kalliodis, 124 Misc 365.] However, a *298 subtenant may be joined as an additional party to a summary proceeding against the lessee-sublessor.” (2 Rasch, New York Landlord & Tenant—Summary Proceedings § 1192, at 624 [2d ed].) "Although a paramount landlord cannot bring a summary proceeding against a subtenant; nevertheless, if he seeks to remove a tenant who has sublet the premises, and desires complete possession, he must join the subtenants. If the subtenants are not made parties to the proceedings, they may not be evicted under a warrant issued in such proceedings. However, the non-joinder of a subtenant is not available as an objection to the proceeding. [Teachers Coll. v Wolterding, 77 Misc 2d 81.]” (Id., at 632-633.) As the Appellate Term stated in Atterbury v Edwa (61 Misc 2d 234): "Under-tenants are proper parties to a summary proceeding, but they are not necessary parties. If a failure to name them as parties would defeat a landlord’s right to evict them, the objection may be taken advantage of by the under-tenants, and not by the tenant.”
A warrant which may issue as per the stipulation of February 10, 1986, cannot be used to evict the subtenant since the subtenant was not made a party to that agreement. It may only be used to gain possession against PSS.
However, where, as here, the facts adduced at trial indicate that the prime tenancy has already been terminated, the relationship between landlord and subtenant changes.
Where the prime tenancy is terminated, the subtenant who continues in possession becomes a tenancy at sufferance. (Inch Corp. v Sixteen Nineteen Realty Co., NYLJ, Feb. 1, 1974, p 17, col 1 [Civ Ct, NY County 1974].)
Real Property Law § 228 states: "A tenancy at will or by sufferance, however created, may be terminated by a written notice of not less than thirty days given in behalf of the landlord, to the tenant, requiring him to remove from the premises; which notice must be served, either by delivering to the tenant or to a person of suitable age and discretion, residing upon the premises, or if neither the tenant nor such a person can be found, by affixing it upon a conspicuous part of the premises, where it may be conveniently read. At the expiration of thirty days after the service of such notice, the landlord may re-enter, maintain an action to recover possession, or proceed, in the manner prescribed by law, to remove the tenant, without further or other notice to quit.” (Emphasis supplied.)
It is uncontroverted that in the case at bar petitioner served *299 no notice on either the prime or subtenant. His failure to comply with service of the 30-day notice is fatal to this proceeding. (Ferraro v Trifiro, 60 NYS2d 679.)
A summary proceeding for the possession of real property is created by statute, and therefore mandates strict compliance with its appropriate provisions. "Section 228 of the Real Property Law is in derogation of the common law, and its sole purpose is to furnish a landlord with a more expeditious remedy to recover possession than he formerly had by an action of ejectment. The statute must, therefore, be strictly construed * * * The court appreciates that this procedure is technical, but it is likewise fundamental and jurisdictional.” (Bastede v Levan, 171 Misc 140, 143, 144; emphasis supplied; see also, Lutzker v King, 190 Misc 670.)
For these reasons, petition is dismissed without prejudice with leave to commence a new holdover proceeding upon proper notice.