OPINION OF THE COURT
 

 Bellacosa, J.
 

 In four cases heard and decided together, the appellants-sponsors assert that they have been erroneously required to permit the respondents-estates to purchase shares, at the less-than-open-market insider price, under cooperative conversion plans in the place and stead of their respective decedents. The sponsors each made offers to "tenants in occupancy” in rent-controlled apartment buildings being converted to cooperative ownership; the tenants-offerees each died before accepting the offers and their estates each attempted to accept pursuant to the terms of the offering statements. Although the sponsors rejected the estates’ proffered acceptances, each of the sponsors was ordered by courts below to honor the estates’ acceptances. The sponsors urge that the decisions below were incorrect because (1) the estates were not "tenants in occupancy” as contemplated by the controlling statute; (2) the
 
 *454
 
 offers lapsed at the time of death of the tenants-offerees; and (3) the results below violate legislative policy and intent.
 

 The issue is whether the unexercised right of a deceased "tenant in occupancy” to purchase shares offered in a cooperative conversion plan at the less-than-market insider price may be exercised by the deceased’s estate. We reverse the determinations below because they are contrary to the controlling statute, to common-law contractual principles and to relevant policy factors. Heirs have no basis in law to enjoy a windfall by resale of converted cooperative apartments, previously rent-controlled, at a value higher than the insider rate offered exclusively to their decedents in occupancy. That is not what these apartment regulation statutes are all about.
 

 In all four cases the salient facts are the same and what differences do exist are not germane to the analysis or disposition. Offering statements were made to tenants in accordance with plans filed with the Attorney-General, and the tenants died during the pendency period of the offer without exercising an acceptance by submitting subscription agreements which their respective estates then attempted in timely fashion to do. The courts below essentially granted summary judgment to the estates against the sponsors and the Appellate Division affirmed in each case, without opinion.
 

 Cooperative conversion plans are governed by General Business Law § 352-eeee. That statute lists a number of requirements before an offering plan can be accepted for filing by the Attorney-General. For example, with respect to eviction plans, 51% of a bona fide "tenants in occupancy” at the date of the offering statement is accepted for filing by the Attorney-General (excluding eligible senior citizens and disabled persons) must submit a subscription agreement before the plan may be declared effective (General Business Law § 352-eeee [2] [d] [i]). Also, "tenants in occupancy” as of the date the plan is accepted for filing shall have the exclusive right, for 90 days, to purchase the shares allocated to their apartment (General Business Law § 352-eeee [2] [d] [ix]).
 

 In each of the matters disposed of today, the respective estate’s decedent had lived alone at the time the conversion plan was accepted by the Attorney-General for filing. Consistent with the provisions of the controlling statute, the offering statement was specifically limited to "tenants in occupancy”. In each case, the lower courts concluded that the tenant’s insider rights vested or were otherwise preserved as of the
 
 *455
 
 time of the Attorney-General’s acceptance of the plan for filing and that the vested rights passed, through some unspecified rules of succession, to the estates. While these results have some appeal about them, they are, on analysis, contrary to the clear language of the General Business Law § 352-eeee, to the legislative intent behind that statute, to a number of fundamental precepts of contract law, and to the sense of prior decisions of this court.
 

 A determination upholding an estate’s right to exercise the power of acceptance of the deceased offeree would contradict the purpose of the regulatory statute
 
 (cf., Sullivan v Brevard Assocs.,
 
 66 NY2d 489). The legislative declaration of purpose reveals that enactment was in response to a "public emergency requiring the regulation and control of residential rents and evictions” (L 1982, ch 555, § 10). As the Legislature declared, the statute was intended to protect "tenants in occupancy”, particularly the elderly and disabled, from "unjust, unreasonable and oppressive rents”, "uncertainty, hardship and dislocation in connection with the conversion process”, and "other disruptive practices affecting all tenants during the conversion process” (L 1982, ch 555, § 1). At the same time the Legislature sought to encourage housing conversion in an orderly manner so as to facilitate the preservation, stabilization, and improvement of neighborhoods (L 1982, ch 555, § 1). The statute is based upon a legislative balancing between the preservation of a stable affordable housing market and the owner’s right to pursue legitimate objectives.
 

 There is no evidence nor is there any express provision showing a legislative intent to further diminish or encumber an owner’s right in property as is urged by the respondents and that was granted by the courts below. Such a significant alteration of rights should not arise from judicial proclamation but should come from clear legislation, grounded in appropriate constitutional and policy considerations.
 

 The estates’ claims of right grounded in contract theory must be examined with an appreciation of fundamental contractual principles. An offer to sell shares in a cooperative conversion confers upon the tenant-offeree a power of acceptance which continues until the offer is accepted or otherwise terminated
 
 (see,
 
 1 Williston, Contracts § 50, at 163 [3d ed 1957]). Consistent with General Business Law § 352-eeee, the offering statements exclusively invited the "tenants in occupancy” on the date the plans were accepted for filing to
 
 *456
 
 submit a subscription agreement in acceptance of the offer
 
 (see,
 
 Restatement [Second] of Contracts § 52 [1981]). The law is well settled that an offeree’s power of acceptance is terminated, making acceptance impossible, when the offeree dies
 
 (Brunner-Booth Fotochrome v Kaufman,
 
 18 AD2d 160; Restatement [Second] of Contracts § 48 [1981]; Calamari and Perillo, Contracts § 2-23, at 81 [2d ed 1977]). "Since an offer can be accepted only by the person to whom it is made, the death of the offeree also has the effect of precluding the possibility of a contract” (1 Williston, Contracts § 62, at 207 [3d ed 1957];
 
 see also, Jones v Union Cent. Life Ins. Co.,
 
 265 App Div 388, 391; Restatement [Second] of Contracts § 52, comment a, illustration 1 [1981]). In these cases the offers contained in the offering statements terminated when acceptance became impossible due to the death of the "tenant in occupancy”. Therefore, on simple contract terms, the tenant-offeree’s right of acceptance could not be exercised by their estates after their death.
 

 The argument that an offering statement creates an option contract which would survive the death of the "tenants in occupancy” falters in the wake of the applicable statute and careful analysis. Offering statements, drafted in compliance with General Business Law § 352-eeee, are not made in return for consideration, are not irrevocable under the terms of the statute, and there is no expectation of induced action or forbearance of a substantial character on the part of the offeree (Restatement [Second] of Contracts § 87 [1981]). One manifestation that such offers do not constitute an option contract is that the statute permits the unilateral amendment of the conversion plan and offering statement by the offerorsponsor from an eviction to a noneviction plan, as occurred in two of the four cases presented here. The exclusivity of the right of acceptance does not make the offering statement an option contract but simply complements the legislative intent and purpose which served as the catalyst for the adoption of the statutory protections in the first place. Unlike a lease option which "is supported by consideration, is binding on the landlord for the period specified in the lease, and is a covenant
 
 [see, Kotcher v Edelblute,
 
 250 NY 178]. The tenant’s statutory right to purchase [under General Business Law § 352-eeee] is
 
 not
 
 supported by consideration, is terminable by the owner at any time and is not a covenant”
 
 (Messing, Estate’s Right to Purchase Under Co-Op Offering Plan,
 
 NYLJ, Dec. 30, 1986, at 32, col 1). Thus, analytically, an offering statement which
 
 *457
 
 complies with the terms of General Business Law § 352-eeee is a distinct legal creature and not a traditional option contract which may, in circumstances not present in these cases, devolve down to estates.
 

 The cases before us were either
 
 ipse dixit
 
 holdings below or largely reliant on other such decisions. The lower courts reasoned that the estates’ rights flowed alternatively from ownership of leases, the vesting of an interest in the offeree or the creation of an option contract. These theories fail because these were not lease cases, there was no vesting of rights implicating successorship, and these statutory creations are not option contracts. Additionally, in reaching their results the courts below did not even discuss the threshold impediment that the estate was not a "tenant in occupancy” as expressly contemplated by the governing regulatory statute at the time the plan was accepted for filing.
 

 Our decision also finds support in our reasoning in
 
 Cooper v 140 E. Assocs.
 
 (27 NY2d 115) and in
 
 Consolidated Edison Co. v 10 W. 66th St. Corp.
 
 (61 NY2d 341). Taken together
 
 Cooper
 
 and
 
 Con Ed
 
 show that the "tenant in occupancy” must be in actual possession and occupying the unit at the time the conversion plan is accepted for filing in order to qualify at all.
 

 The otherwise undefined terms of General Business Law § 352-eeee provide that the party who is to be protected by its provisions must be a "tenant in occupancy” at the time the plan is accepted for filing. Definitions contained in other statutory or administrative contexts
 
 (see,
 
 New York City Rent Control Law, Administrative Code of City of New York § Y513.0 [m]; McKinney’s Uncons Laws of NY § 8582 [7] [Emergency Housing Rent Control Act, L 1946, ch 274, as amended]) are not incorporated by reference or otherwise applicable here because, in light of their conspicuous absence from this governing section, we conclude that the Legislature intended in this instance that they not be applicable to General Business Law § 352-eeee
 
 (see, Sullivan v Brevard Assocs., 66
 
 NY2d 489, 493-494,
 
 supra).
 
 In any case,
 
 Cooper (supra)
 
 and
 
 Con Ed (supra)
 
 stand for the proposition that the critical component to establishing an entitlement to exercising the insider rights of a "tenant in occupancy” is a landlord-tenant relationship coupled with actual use and possession at the time the plan is accepted for filing. In applying the
 
 Cooper-Con Ed
 
 principle to the facts before us, none of the estates before us on these appeals could be said to have been "tenants in occupancy”
 
 *458
 
 since none was using or occupying the unit at the time the plan was accepted for filing. They did not legally or realistically accede to that status of their decedents.
 

 As we have indicated, there is no statutory, common-law or equitable basis upon which estates should be allowed to garner a windfall via decedents and for the benefit of heirs by resale of the converted apartments at a value higher than the insider rate at the expense of the sponsor/owner’s reversion rights under the filed plan.
 

 How would the disorderly or unfair eviction of "tenants in occupancy” be prevented by permitting their estates to exercise insider rights to purchase in these circumstances? It would not be. No possibility exists that those who have not affirmatively exercised their subscription rights will be subject to an unjust eviction after they have passed away. And should the occupants’ specially protected rights to a home place be convertible into cash to benefit heirs? We think that is not the purpose of the governing statute either. The succession of rights to estates as authorized by the courts below would not promote orderly workable conversions of rent-controlled apartments but, to the contrary, the interposition of the estate with the not infrequent discord over rights of succession and the delays of winding up estate matters would only exacerbate the rental and realty matters that General Business Law § 352-eeee was meant to remedy.
 

 Accordingly, we should reverse in
 
 De Kovessey,
 
 with costs, denying plaintiffs motion for summary judgment; reverse in
 
 Lipkowitz,
 
 with costs, dismissing the petition; reverse in
 
 Lagary,
 
 with costs, denying plaintiffs’ motion for summary judgment and granting defendant’s cross motion for dismissal; and reverse in
 
 Amsterdam,
 
 with costs, denying defendant’s motion for summary judgment and granting plaintiffs’ motion for summary judgment.
 

 Chief Judge Wachtler and Judges Simons, Kaye, Titone and Hancock, Jr., concur; Judge Alexander taking no part.
 

 In
 
 De Kovessey v Coronet Props. Co.:
 
 Order reversed, etc.
 

 In
 
 Matter of Lipkowitz v Coronet Props. Co.:
 
 Order reversed, etc.
 

 In
 
 Lagary v Wiener Mgt.:
 
 Order reversed, etc.
 

 In
 
 Amsterdam Manhattan Assocs. v Estate of Leichtman:
 
 Order reversed, etc.