OPINION OF THE COURT
Israel Rubin, J.
The motion designated as number 4 and the petition designated as number 5 on the calendar of December 7, 1988 are consolidated for disposition in accordance herewith.
*53 Pursuant to CPLR article 78, petitioner seeks a judgment vacating as arbitrary and capricious a determination by respondent which rejected petitioner’s offering plan for conversion of the premises known as 83-85 First Avenue, New York, New York, to cooperative ownership. By way of order to show cause, petitioner additionally seeks a stay of respondent’s rejection of its offering plan pending the determination of this proceeding pursuant to CPLR 7805 or, in the alternative, CPLR 6301.
The facts are largely undisputed. Petitioner submitted its offering plan to the Real Estate Financing Bureau (REFB) of the Department of Law for review on June 29, 1988. The subject building contains 20 units, out of which two units (apts. 10A and 6B) were admittedly vacant for more than five months as of the date the plan was submitted. The REFB, however, alleges that a third unit (apt. 2B) was not "occupied by bona fide tenants for more than five months prior to the date of such submission to the department of law” (General Business Law § 352-eeee [2] [e]) and refused to accept petitioner’s plan for filing.
Apartment 2B was the subject of a nonpayment proceeding which was commenced in the Housing Part of the Civil Court of the City of New York in March 1987. The petition therein states that the apartment is subject to the Rent Stabilization Law. Petitioner, which only purchased the subject building in December 1986, sought rent due from October 1986 through and including February 1987 from the tenant, Pauline Maloni. Ms. Maloni answered by attorney on March 13, 1987 and the matter was set down to be heard on March 20, 1987. Thereafter, the proceedings were adjourned a number of times.
In an affidavit by Ms. Maloni sworn to on September 14, 1987, she states that, subsequent to the commencement of the nonpayment proceeding, she attempted to sublet the apartment to one Bill Uhre. The landlord, however, refused to consent to the sublet (Real Property Law § 226-b). The affidavit goes on to state: "I hereby consent, as a modification of the stipulation issued heretofore, for any warrant to be issued and executed at any time after September 30, 1987. I hereby give notice that that is the date upon which I wish to be deemed to have vacated the premises.” The reference to a "stipulation issued heretofore” is curious, as petitioner denies that any such stipulation was signed. Be that as it may, an order to show cause seeking to add Mr. Uhre as a party to the nonpayment proceeding was signed on November 13, 1987.
*54 On December 1, 1987, the parties entered into a stipulation settling the proceeding in which the tenant and "subtenant” consent to the court’s jurisdiction and to a final judgment' of possession only, "warrant to issue forthwith, execution stayed through 12/31/87.” Upon surrender of the premises "on or after 12/31/87” the stipulation, which contains no provision for payment of rent arrears, provides for payment of $5,000 to the tenant. It also provides that no further proceedings shall be interposed to stay execution of the warrant.
As it happened, however, the warrant was not immediately issued and, when Mr. Uhre failed to vacate the apartment as agreed, petitioner was required to submit a request for a warrant to the court. According to a letter dated March 22, 1988 from petitioner’s attorney to the tenant’s attorney, the warrant was returned unsigned with the explanation that the court file was lost. Petitioner subsequently succeeded in obtaining a warrant of eviction, which was signed on March 25, 1988 and executed on April 11, 1988.
Based upon these facts, the REFB concluded that the landlord-tenant relationship ceased either as of December 1, 1987, the date of the stipulation, or, in any event, no later than December 31, 1987, the date the premises were to be surrendered according to its terms. The REFB further concluded that, with the agreement to surrender possession, the premises ceased to be occupied by "a bona fide tenant as of December 1, 1987” and, therefore, considered the apartment to have been vacant for more than five months prior to submission of petitioner’s proposed offering plan (submitted June 29, 1988) requiring the plan’s rejection pursuant to the General Business Law § 352-eeee (2) (e).
Petitioner contends that the landlord-tenant relationship did not terminate until issuance of the warrant on March 25, 1988 and that it was unable to recover possession of the premises so as to be able to relet them until execution of the warrant on April 11, 1988. Therefore, it contends that the conclusion drawn by the REFB is arbitrary and capricious and contrary to law.
Where a summary proceeding to recover possession of real property has been instituted, the landlord-tenant relationship may only be terminated by actual surrender of the premises (Cornwell v Sanford, 222 NY 248 [1918]; Ash v Purnell, 16 Daly 189 [1890]) or by issuance of a warrant of eviction (RPAPL 749 [3]; New York City Hous. Auth. v Torres, 61 AD2d *55 681 [1st Dept 1978]). Actual surrender is traditionally effected by vacating the premises and returning the keys to the landlord (Fishel v Baronelli, Ltd,., 119 Misc 2d 625). The facts adduced upon this petition do not establish the termination of the tenancy by surrender of the premises. Although a set of keys was returned to petitioner’s attorneys on or about March 14, 1988, it is petitioner’s uncontroverted assertion that those keys did not open the apartment door. Therefore, as a matter of law, the landlord-tenant relationship was not extinguished until issuance of the warrant on March 25, 1988, and possession of the premises was not recovered until execution of the warrant by the marshal on April 11, 1988.
The REFB nevertheless argues that occupancy of the premises by Bill Uhre, as an illegal subtenant in contravention of the provisions of Real Property Law § 226-b, does not constitute occupancy "by bona fide tenants” within the meaning of General Business Law § 352-eeee (2) (e). It contends that it is required "to examine the indicas [sic] of tenancy, not merely physical occupancy.” In support of this premise, the REFB cites instances where the tenancy is a sham, such as "[w]here a sponsor’s close relative lives in an apartment but the sponsor pays the rent” or "[w]here a person lives in an apartment pursuant to a lease but pays no rent and only stores his furniture or clothes in the apartment”. The REFB further asserts that "squatters, licensees and illegal subtenants are similarly not deemed to be bona fide tenants.”
The question raised by these contentions concerns the factors which comprise a bona fide tenancy within the contemplation of the statute. This court is prepared to accept, as a general proposition, that a person who is put into possession of an apartment by a landlord for the purpose of holding that apartment off the rental market and who serves as a mere caretaker for the premises, without payment of rent, is not a bona fide tenant within the meaning of the statute. This court is not, however, prepared to make the leap of logic required to reach the conclusion drawn by the REFB that squatters, licensees and illegal subtenants are not bona fide tenants as a matter of law. The operative criterion is the manner in which the occupant of the premises derives his claim to possession. If he has been put into possession by the landlord or an agent of the landlord, the REFB may look beyond the legal relationship and examine the bona fides of the tenancy. Where, however, as here, it is uncontested that the occupant derives his claim to possession through a legitimate tenant, dealing at *56 arm’s length with the landlord, the REFB is bound by the legal relationship of the parties.
The REFB does not dispute the legitimacy of Pauline Maloni’s tenancy. Nor does it dispute Ms. Maloni’s assertion that Mr. Uhre took possession as a proposed subtenant pursuant to her request for permission to sublet the apartment in accordance with section 226-b of the Real Property Law. Her letter, dated May 29, 1987, containing this request is attached to petitioner’s reply papers.
The REFB, however, seizes upon petitioner’s denial of the requested sublet to label Mr. Uhre an "illegal subtenant”. What it overlooks is that the legality of the sublet is not determined by the consent of the landlord, but by a judicial determination as to whether the landlord’s withholding of consent is reasonable or unreasonable (Ontel Corp. v Helasol Realty Corp., 130 AD2d 639 [2d Dept 1987]). In the absence of a judicial determination of the propriety of the landlord’s rejection of the sublessee, the legality of his subtenancy must be presumed. Where, as here, the facts are equally susceptible to interpretation, the law requires a construction consistent with legality, and mere speculation will not operate to overcome the presumption (De Mayo v Yates Realty Corp., 35 AD2d 700 [1st Dept 1970], affd 28 NY2d 894 [1971]). A warrant of eviction, issued upon a judgment or pursuant to a stipulation to which the subtenant is a party, is necessary to terminate the landlord-tenant relationship and effect the subtenant’s eviction from the premises (Lippe v Professional Surgical Supply Co., 132 Misc 2d 293). This court must conclude that the REFB’s letter rejection of the offering statement is without foundation and therefore arbitrary and capricious.
It is evident from the REFB’s letter rejecting the offering plan that rejection was based solely on the alleged excessive long-term vacancy pursuant to the provisions of General Business Law § 352-eeee (2) (e) and that no further steps have been taken to evaluate petitioner’s offering statement. The letter states, "since no substantive review of the contents of the plan has been done because of this finding, deficiencies in the plan are not enumerated.” The implicit conclusion that a violation of the excessive long-term vacancy provision is not a "deficiency” in the plan as enumerated in section 352-e (2) of the statute is correct. However, the statutory scheme does not support respondent’s conclusion that the asserted existence of excessive long-term vacancies relieves the REFB of the obliga *57 tion to identify deficiencies in the statement in a timely fashion (General Business Law § 352-eeee [2] [e]; 2647 Realty Co. v Abrams, 138 Misc 2d 308). In any event, it is entirely appropriate, in view of the decision herein, that the REFB be ordered to act with reasonable dispatch to complete its review (Parkchester Apts. Co. v Lefkowitz, 44 AD2d 442 [1st Dept. 1974]).
Accordingly, petition granted, motion denied as moot. In the exercise of discretion (CPLR 2004), the time for issuance of a final letter enumerating all deficiencies in the offering statement pursuant to General Business Law § 352-e (2) is extended until 30 days after service of a copy of this judgment with notice of entry.