SUSAN STEIER, Appellant-Respondent, v SHOSHANA KRAUSHAR SCHREIBER, Respondent-Appellant, and 93RD STREET LLC et al., Respondents. [810 NYS2d 431]—

Order, Supreme Court, New York County (Richard F. Braun, J.), entered on or about April 19, 2004, which, inter alia, denied plaintiff's motion for summary judgment to declare her the tenant in occupancy of a certain rent-stabilized apartment and to direct defendant 93rd Street LLC (93rd Street) to sell the premises to her pursuant to a certain condominium conversion plan, and granted defendants 93rd Street and 327 Central Park West LLC's (327 Central) cross motion to dismiss plaintiff's "second fourth cause of action" asserting conspiracy under the Martin Act, unanimously modified, on the law, plaintiff's motion granted to the extent of declaring plaintiff the tenant in occupancy with the concomitant right to purchase the apartment pursuant to the conversion plan, directing 93rd Street to accept plaintiff's tender of payment and original purchase agreement, nunc pro tunc, and to specifically perform pursuant to the conversion plan, and otherwise affirmed, without costs.

In 1988, plaintiff Susan Steier learned that defendant Shoshana Kraushar Schreiber was looking for a roommate to occupy the second bedroom of Schreiber's rent-stabilized apartment and to share its expenses. Plaintiff was subsequently introduced to Schreiber, who was approximately 40 years plaintiff's senior, and moved into the apartment shortly thereafter. In August 1999, Schreiber vacated the premises and took up

residence at the Scharome Manor Nursing Home. At that time, Schreiber ceased paying rent and the utility bills and Judith Nayman, Schreiber's daughter, testified at an examination before trial that she disconnected her mother's phone and removed all of her mother's furniture. Schreiber also did not recertify for benefits under the Senior Citizens Rent Increase Exemption (SCRIE).

327 Central thereafter commenced a holdover proceeding against Schreiber and Steier in October 1999, based upon the assertions that Schreiber, the tenant of record, maintained her primary residence at Scharome Manor, and that Schreiber, upon vacating the apartment, had "informed agents for the landlord that she has no intention of returning to the subject premises."* Schreiber, at an examination before trial conducted in regard to the matter presently at bar, confirmed that she told 327 Central's agent that she was leaving.

Steier and 327 Central, in connection with the holdover proceeding, entered into a stipulation on October 26, 1999, pursuant to which the parties thereto agreed that Steier would pay use and occupancy for the apartment during the course of the proceeding. Nayman was thereafter appointed guardian ad litem for Schreiber by the Civil Court in November 2000, and on December 4, 2000, the proceeding was marked "off calendar" and has since remained dormant. Steier has continued to reside in the apartment and has paid use and occupancy.

Defendant 93rd Street subsequently became the sponsor of a plan to convert 327 Central Park West to condominium ownership, which plan was declared effective in June 2002. 93rd Street, however, did not send the offering plan and contract to purchase the apartment to Steier, although Steier, in any event, timely submitted an executed purchase agreement for the apartment, together with the applicable down payment, on May 16, 2002. 93rd Street, by letter dated May 20, 2002, rejected Steier's offer to purchase the apartment. In the interim, 93rd Street had mailed the conversion plan and relevant documentation to Schreiber at Nayman's residence in Woodmere, New York. Schreiber, in August 2002, served Steier with a notice terminating tenancy and occupancy on the ground that she was merely a tenant-at-will of Schreiber, and this action ensued.

After discovery, Steier moved for summary judgment, assert-

---

* Paradoxically, 327 Central, in this matter, now takes the opposite tack and states, in its brief, that "[t]here is nothing in the record to indicate that . . . Schreiber has terminated her tenancy or surrendered possession of the apartment," and that Schreiber "has never disclaimed her interest in the apartment and does not maintain any other primary residence."

ing, inter alia, that she was entitled to purchase the apartment as the tenant in occupancy. Schreiber, in opposition, argued that Steier was merely a "roommate" she took in. Moreover, Schreiber's attorney averred in an affirmation that any statements made by Schreiber to the contrary at her deposition were "totally without value and merely shows she does not understand what is going on," and that Schreiber was indeed the "tenant in occupancy" because she had to go to the hospital, and from there to an adult home for assisted living, which is not considered an interruption because it constituted medical reasons as set forth in 9 NYCRR 2204.6 (d) (1) (v). Counsel, however, submitted absolutely no evidence to support his implication that Schreiber's medical condition was only temporary.

Defendants 93rd Street and 327 Central cross-moved to dismiss Steier's claims as against them for damages and argued that there was no merit to Steier's claims of a conspiracy between the condominium sponsors and Nayman to deprive Steier of the opportunity to purchase the apartment.

The motion court, in relevant part, denied Steier summary judgment on her claim of entitlement to purchase the apartment, and granted the condominium sponsors' cross motion to the extent of dismissing Steier's claim for damages based upon a conspiracy theory. The court, on the record, came to the somewhat puzzling conclusion that "[p]laintiff has proven her entitlement to summary judgment. However, defendants have shown that there are questions of fact, in part, and so there must be a trial in this matter." The motion court held that there were issues of fact as to whether Schreiber intended to permanently vacate the premises. We disagree, and modify accordingly.

The right to purchase the shares allocated to a rent-controlled apartment at the insider's price pursuant to an offering plan to convert the apartment to cooperative/condominium ownership is limited to a "tenant in occupancy" at the time the plan is accepted for filing (*De Kovessey v Coronet Props. Co.*, 69 NY2d 448, 457 [1987]; *Weinstein v Hohenstein*, 69 NY2d 1017, 1019 [1987]). The Court of Appeals has held that the "tenant in occupancy" must be "in actual possession and occupying the unit at the time the conversion plan is accepted for filing [the 'critical date'] in order to qualify at all" (*De Kovessey, supra* at 457), but has also found "tenant in occupancy" status where the apartment in question was not actually used as the primary residence (*see Manolovici v 136 E. 64th St. Assoc.*, 70 NY2d 785 [1987]; *Burns v 500 E. 83rd St. Corp.*, 59 NY2d 784 [1983]).

The lynchpin of the analysis is whether the tenant has "maintained a sufficient nexus with the apartment as of the critical date to qualify as a tenant in occupancy" (*Manolovici*, 70 NY2d at 787; *Lieberman v Norman Realty*, 186 AD2d 790, 792 [1992]).

This Court, in circumstances analogous to those at bar, held that "[w]here there are adverse claims to the status of tenant in occupancy, resolution of the issue should turn on a practical analysis of the relationship of the competing parties to the demised property, not necessarily on whose name happens to appear on the lease" (*McSpadden v Dawson*, 117 AD2d 453, 457 [1986]; *see also Baron v Sherwood*, 124 AD2d 527, 528 [1986]).

Here, Schreiber vacated the premises in August 1999, almost three years prior to the conversion plan being declared effective. At the time she moved, Schreiber ceased paying rent and utility bills, cancelled her phone service, removed all of her furniture, allowed her SCRIE benefits to lapse, and announced to the landlord's agent that she had "no intention" of returning to the apartment. Indeed, there is no indication that Schreiber had any nexus to the premises whatsoever from the time she moved into Scharome Manor until Nayman's receipt of the offering plan.

Nayman, somewhat remarkably, now contends that Schreiber planned to move back into the apartment. It is clear from the record, however, that Schreiber suffers from dementia, her own counsel has opined that "she does not understand what is going on," and the motion court, at a pretrial conference held on April 19, 2004, unequivocally stated that Schreiber has been diagnosed by a psychiatrist as suffering from dementia. Moreover, Nayman has submitted absolutely nothing to shed any light on the nature or severity of Schreiber's condition, other than counsel's above observation, or her ability to move out of Scharome Manor and back into the apartment.

In light of the foregoing, we find that a "practical analysis of the relationship of the competing parties to the demised premises" (*McSpadden, supra* at 457) makes it abundantly clear that the status of "tenant in occupancy" belongs to Steier and that she is entitled to purchase the shares allocated to the apartment.

We agree with the motion court that plaintiff's "second fourth [*sic*]" cause of action must be dismissed as New York does not recognize civil conspiracy to commit a tort as an independent cause of action (*Ward v City of New York*, 15 AD3d 392, 393 [2005]; *Pappas v Passias*, 271 AD2d 420, 421 [2000]). To the extent that plaintiff seeks to recover damages for tortious

interference with prospective economic advantage, that claim also fails as plaintiff has not demonstrated that the sponsors and Schreiber acted solely for the purpose of harming her (*see Alexander & Alexander of N.Y. v Fritzen*, 68 NY2d 968, 969 [1986]; *Simaee v Levi*, 22 AD3d 559, 562-563 [2005]).

Finally, we agree that plaintiff does not have a private right of action under the Martin Act (*see CPC Intl. v McKesson Corp.*, 70 NY2d 268, 275-276 [1987]; *Thompson v Parkchester Apts. Co.*, 249 AD2d 68 [1998], *lv dismissed* 92 NY2d 946 [1998]). Concur—Saxe, J.P., Nardelli, Williams, Gonzalez and Catterson, JJ.