OPINION OF THE COURT
Per Curiam.
Order dated November 28, 2007, reversed, with $10 costs, motion denied, petitions reinstated and final judgments awarded to petitioners on the holdover petitions. Issuance of the warrants of eviction shall be stayed for 60 days after service of a copy of this order with notice of entry.
On February 1, 2006 petitioners, the owners of building premises located at 200 East 66th Street, in Manhattan, submitted a proposed offering plan to the New York State Attorney General for the conversion of the building to condominium ownership under a noneviction plan. Shortly thereafter, petitioners commenced these holdover summary proceedings against respondents — 29 unregulated tenants — on the ground that their respective leases had expired. Respondents moved, pre-answer, to dismiss the petitions on the ground that they were protected from eviction under General Business Law § 352-eeee (Martin Act). Civil Court (Finkelstein, J.) denied the motion to dismiss, holding that respondents were not entitled to the protections of the Martin Act in the “red herring” stage of the condominium conversion. A few days later, on March 1, 2007, the offering plan was accepted for filing by the Attorney General. Respondents then answered the petitions, asserting, this time as an affirmative defense, that the holdover proceedings were barred by the Martin Act. The parties entered into a so-ordered stipulation, whereby the 29 proceedings were consolidated, respondents acknowledged petitioners’ prima facie case and the parties agreed to submit tenants’ Martin Act defense for the court’s consideration on written memoranda. The court concluded that respondents were entitled to protection under the Martin Act and dismissed the petitions. Petitioners now appeal and we reverse.
Respondents’ motion to dismiss the holdover petitions should have been denied, since the record does not establish that they were “tenants in occupancy” at the time the offering plan was accepted for filing by the Attorney General.* Protection under the provisions of General Business Law § 352-eeee is afforded *27 only to “tenants in occupancy” at the time the offering plan is accepted for filing (see De Kovessey v Coronet Props. Co., 69 NY2d 448, 457 [1987]). The “critical component” for establishing the “rights of a ‘tenant in occupancy’ is a landlord-tenant relationship coupled with actual use and possession at the time the plan is accepted for filing” (id. at 457-458). While it is uncontroverted that respondents were in actual possession of their respective apartments at the time the plan was accepted for filing, the record does not support a finding that a landlord-tenant relationship existed between respondents and petitioners when the plan was accepted for filing.
The relationship of landlord and tenant is created by a contract — expressed or implied — which defines the rights and obligation of the parties (see 1 Dolan, Rasch’s Landlord and Tenant — Summary Proceedings § 1:1, at 3-4 [4th ed]; Scherer, Residential Landlord — Tenant Law in New York §§ 2.1, 2.2, at 22-23 [2007 ed]). “When the time specified in a [written] lease for the end of a term thereof arrives, the lease ‘expires’ and the relationship of landlord and tenant comes to an end” (1 Dolan, Rasch’s Landlord and Tenant — Summary Proceedings § 10:1, at 445 [4th ed]). Upon the expiration of the lease agreement, it is the obligation of a tenant to vacate from the demised premises, inasmuch as his or her rights to continue in possession thereof have expired (see Stahl Assoc. Co. v Mapes, 111 AD2d 626 [1985] [“At the end of the term the tenant must leave because his rights to possession have expired”]). Where the tenant holds over after the expiration of the lease term, the landlord is not required to allege or prove any basis for eviction other than the expiration of the lease (see Scherer, Residential Landlord — Tenant Law in New York § 8.42, at 547 [2007 ed]).
Applying these settled principles to the situation at bar, and given that respondents’ unregulated, market-rate leases contained no right of renewal and expired prior to the date upon which the offering plan was accepted for filing, we conclude that no landlord-tenant relationship existed as of the filing date. Respondents did not retain the legal right to continued occupancy of their apartments and thus the prong of De Kovessey’s conjunctive qualifying definition that a party be a “tenant” at the time the conversion plan is accepted for filing was not satisfied herein. The purpose of General Business Law § 352-eeee is to protect tenancies extant during the cooperative *28 or condominium conversion process. By the statute’s own language, nonpurchasing tenant status is conferred only on a tenant who is entitled to possession at the time the plan is declared effective (see Park W. Vil. Assoc, v Chiyoko Nishoika, 187 Misc 2d 243 [2000]). Inasmuch as respondents’ leaseholds had expired prior to the date the plan was accepted for filing, they are not “tenants” entitled to protection from eviction under the Martin Act.
We also disagree with the court’s conclusion that these holdover proceedings are barred by the anti-harassment provisions contained in General Business Law § 352-eeee (4). Respondents failed to allege or prove any specific conduct interfering with their occupancy akin to those tactics found to be proscribed by the Martin Act (see People v Lexington Sixty-First Assoc., 38 NY2d 588 [1976]; State of New York v Fashion Place Assoc., 224 AD2d 280 [1996], lv dismissed 89 NY2d 917 [1996]; State of New York v 820 Assoc., 116 Misc 2d 901 [1982], affd 93 AD2d 1008 [1983]), which would warrant dismissal of these proceedings.
McKeon, EJ., Davis and Schoenfeld, JJ., concur.

 We have been informed that four of the 29 respondents — Cinque, Altheck, Waitman and Fleming — executed agreements to purchase their respective *27 apartments as condominiums during the pendency of this appeal, a circumstance which renders moot the controversy involving these respondents.