[908 NYS2d 6]

MH Residential 1, LLC, et al., Respondents, v John Barrett et al., Appellants, et al., Respondents.

First Department, September 14, 2010

### APPEARANCES OF COUNSEL

*Adam Leitman Bailey, P.C.*, New York City (*Jeffrey R. Metz* and *Dov Treiman* of counsel), for appellants.

*Axelrod, Fingerhut & Dennis*, New York City (*David L. Fingerhut* of counsel), for respondents.

### OPINION OF THE COURT

Saxe, J.

On this appeal we consider the rights of tenants whose leases have expired prior to the acceptance for filing of the sponsor's non-eviction conversion plan and whose tenancies are not subject to any tenancy protection statutes or regulations such as the Rent Stabilization Law or the Rent and Rehabilitation Law. We affirm the determination of Appellate Term that because respondents' leases expired before the sponsor's condominium conversion plan was accepted for filing, respondents are not entitled to the protections of the Martin Act (General Business Law § 352-eeee) although for reasons somewhat different from those of Appellate Term.

Petitioners are the owners of a large residential building located at 200 E. 66th Street in Manhattan; the building contains both rent-stabilized apartments and unregulated rental apartments. On or about February 1, 2006, the owners submitted a proposed non-eviction offering plan to convert the building from rental to condominium ownership. Thereafter, they commenced holdover proceedings against 29 market-rate tenants whose leases had expired, 11 of whom had been offered renewal leases. According to those tenants, the renewal leases could not be considered bona fide offers, because they were for only 3, 6 or

12 months and sought rents that were substantially higher than those previously paid, in some instances nearly double the previous rents, and nearly all gave the landlord the right to terminate the extension on only 15 days' notice and to compel the tenant to relocate to another apartment at the same rent, regardless of the new apartment's size, location or condition.

Respondents brought a pre-answer motion to dismiss, claiming entitlement to protections under the Martin Act, which was denied on the ground that the Martin Act does not offer such protection before the offering plan is accepted for filing, i.e., while it is in the "red herring" stage. Once the offering plan was accepted for filing on March 31, 2007, respondents served answers interposing the affirmative defense that the Martin Act protected them from eviction based on the expiration of their tenancies (*see* General Business Law § 352-eeee [2] [c] [ii]). The parties entered into a so-ordered stipulation in which the 29 proceedings were consolidated for disposition, respondents acknowledged petitioners' prima facie case, and the parties agreed to submit respondents' Martin Act defense for the court's consideration.

The Civil Court concluded that respondents were entitled to protection under the Martin Act, and dismissed the petitions. Appellate Term reversed, however, reinstating the petitions and granting final judgment in favor of the landlord (22 Misc 3d 25 [2008]). It held that the tenants were not "tenants in occupancy" protected by the Martin Act at the time the offering plan was accepted for filing, since to qualify as a tenant in occupancy there must be a "landlord-tenant relationship" as well as actual use and possession of the premises (*id.* at 26-27, citing *De Kovessey v Coronet Props. Co.*, 69 NY2d 448, 457 [1987]). It added that the holdover proceedings were not barred by the anti-harassment provisions of the Martin Act, because the tenants had not alleged or proved any specific conduct that sufficiently interfered with their occupancy.

On appeal, respondents do not challenge the standard applied by Appellate Term to determine their entitlement to Martin Act protection, namely, whether there is a "landlord-tenant relationship" between the parties. Rather, they contend that Appellate Term erred in concluding that the "landlord-tenant relationship" vanishes the moment the lease term expires, and argue that Appellate Term improperly relied on a treatise of landlord-tenant law in order to hold that "[w]hen the time specified in a [written] lease for the end of a term thereof arrives,

the lease 'expires' and the relationship of landlord and tenant comes to an end" (22 Misc 3d at 27, quoting 2 Dolan, Rasch's Landlord and Tenant—Summary Proceedings § 23:1, at 165 [4th ed]). They contend that "the landlord-tenant relationship may only be terminated by actual surrender of the premises or by issuance of a warrant of eviction" (*Matter of Eight Cooper Equities v Abrams*, 143 Misc 2d 52, 54 [1989] [citations omitted]).

We conclude that focusing on whether there is a landlord-tenant relation misdirects the inquiry.

The Martin Act dictates that when a building is undergoing conversion to cooperative ownership under a non-eviction plan, the plan must provide that "[n]o eviction proceedings will be commenced at any time against non-purchasing tenants for failure to purchase or any other reason applicable to expiration of tenancy" (General Business Law § 352-eeee [2] [c] [ii]). The Act defines "[n]on-purchasing tenant" as "[a] person who has not purchased under the plan and *who is a tenant entitled to possession at the time the plan is declared effective*" (General Business Law § 352-eeee [1] [e] [emphasis added]).

Therefore, the dispositive question on this appeal is whether respondents, whose leases expired before the offering plan was accepted for filing, qualify as *"tenant[s] entitled to possession at the time the plan [was] declared effective."* The sponsor's offering plan was declared effective on March 31, 2007, after respondents' leases had expired and holdover proceedings commenced, but before any warrants of eviction issued.

The *De Kovessey* case, on which Appellate Term relied, concerned a different portion of section 352-eeee (2) (c). It dealt with the question of who has the right to purchase shares under a cooperative conversion plan at the insider price; the party claiming insider rights was the estate of a deceased tenant. The part of the statute being interpreted there was the part that contains the requirement for purchase agreements by "bona fide tenants in occupancy" (§ 352-eeee [2] [c] [i]). Accordingly, the *De Kovessey* Court focused on the words "tenants in occupancy." The Court observed that "the critical component to establishing an entitlement to exercising the insider rights of a 'tenant in occupancy' is a landlord-tenant relationship coupled with actual use and possession at the time the plan is accepted for filing" (69 NY2d at 457), and found that the estate of the deceased tenant could not qualify as a "tenant in occupancy" entitled to purchase because it was not "using or occupying the

unit at the time the [conversion] plan was accepted for filing" (*id.* at 457-458).

The *De Kovessey* Court's definition of a "bona fide tenant in occupancy" entitled to buy at the insider price does not answer the question of whether respondents were "tenant[s] entitled to possession at the time the plan [was] declared effective." Nevertheless, although the *De Kovessey* decision focuses solely on the issue of whether the entity claiming a tenant's rights can be said to be in actual use and possession of the premises, and does not define or discuss what it meant by "a landlord-tenant relationship," Appellate Term simply imported its language into the present case.

However, even if the question before us were properly understood to turn on whether there was a "landlord-tenant relationship," respondents' arguments would be unavailing.

They contend that "the landlord-tenant relationship may only be terminated by actual surrender of the premises or by issuance of a warrant of eviction" (*Matter of Eight Cooper Equities,* 143 Misc 2d at 54 [citations omitted]). However, *Eight Cooper Equities* cannot properly be relied on in this context to bestow legal rights on an unregulated tenant whose lease has expired. In that case, the Attorney General had rejected a sponsor's conversion plan on the ground that the sponsor had violated the anti-warehousing provisions of the Martin Act because two of the building's 20 units had been vacant for more than five months before the plan was filed, and a third was the subject of a summary nonpayment proceeding in which the landlord recovered possession approximately three months before the submission of the offering plan. In granting the sponsor's CPLR article 78 challenge to the Attorney General's decision, the court held that the third unit at issue did not qualify as a long-term vacancy because the tenant in possession was "bona fide" even when there was a summary nonpayment proceeding under way. It reasoned that the tenant should be considered "bona fide" because "[w]here a summary proceeding to recover possession of real property has been instituted, the landlord-tenant relationship may only be terminated by actual surrender of the premises or by issuance of a warrant of eviction" (*id.* [citations omitted]). While this statement of law was correct in the context of that case, it cannot be properly applied to unregulated tenants whose leases have already expired so as to extend their possessory rights until issuance of a warrant of eviction.

Citing RPAPL 749 (3), which provides that "[t]he issuing of a warrant for the removal of a tenant cancels the agreement under which the person removed held the premises, and annuls the relation of landlord and tenant," respondents argue that the landlord-tenant relation cannot be annulled *until* a warrant of eviction issues. But it does not follow from the fact that a warrant of eviction "annuls the relation of landlord and tenant" that a warrant of eviction is the only means of annulling that relationship. Notably, section 749 (3) applies to a variety of grounds for removing tenants other than holdovers, such as nonpayment and nuisance; in such situations, the issuance of a warrant is necessary to cut off the tenant's rights under the active lease. The same is not true, however, for unregulated tenants whose leases have expired. In holdover matters regarding unregulated expired leases, the tenancy rights have already been extinguished by the expiration of the lease term.

In the other cases relied on by respondents, there was an extant leasehold right at the critical point, either by the terms of the lease or by operation of rent regulation statutes. The present matter lacks that essential component.

The hard truth is that in the context of an unregulated tenancy, "[a]t the expiration of the term, the tenant leaves because his rights to possession have expired" (*Stahl Assoc. Co. v Mapes*, 111 AD2d 626, 628 [1985]). While that precept is not absolute, such as where tenancies are subject to statutory rent protections, or where the landlord accepts monthly rent payments after the lease term has expired (*see* Real Property Law § 232-c), the general rule, rather than any exception, applies here. Where an unregulated tenancy has expired, absent some special circumstance, the tenant retains only the minimal protections applicable to the common-law "tenant at sufferance" (*MASTAS v Extra Closet*, 146 Misc 2d 698, 699 [1990]). While such a tenant may arguably still have something constituting a "landlord-tenant relationship" with the landlord, he does not have any *entitlement* to possession once his lease has expired.

Although the Martin Act reflects a public interest in protecting tenants properly in possession who do not desire or who are unable to purchase the units in which they reside, and therefore should be construed liberally, the statute does not bestow, by mere implication, tenancy rights on individuals whose rights have expired with the term of their leases. Nor do the present circumstances warrant any grant of relief to respondents under

the Act's anti-harassment provision (General Business Law § 352-eeee [4]).

Because the parties are free to chart their own litigation course, our agreement with Appellate Term's rejection of respondents' defense does not alone authorize that court's award of final judgments to the landlord, in light of the parties' stipulation presenting for determination only the limited issue of the Martin Act claim. We are therefore compelled to remand the matter for determination of the remaining claims and defenses.

Accordingly, the order of the Appellate Term of the Supreme Court, First Department, entered December 2, 2008, which, in consolidated holdover summary proceedings, reversed the order of the Civil Court, New York County (David B. Cohen, J.), entered on or about November 28, 2007, granting respondent tenants' motion to dismiss the petitions, reinstated the petitions and awarded final judgments to petitioner landlords, unanimously modified, on the law, to vacate the final judgments, and to remand the matter to Civil Court for determination of the parties' remaining claims and defenses, and otherwise affirmed, without costs.

ANDRIAS, J.P., SWEENY, FREEDMAN and ROMÁN, JJ., concur.

Order of the Appellate Term of the Supreme Court, First Department, entered December 2, 2008, modified, on the law, to vacate final judgments awarded to petitioners, and to remand the matter to Civil Court for determination of the parties' remaining claims and defenses, and otherwise affirmed, without costs.